**William Walter ECKERT, Jr.,**
**Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee**
**(Plaintiff).**

**No. 83–227.**

Supreme Court of Wyoming.

April 27, 1984.

Leonard D. Munker, State Public Defender; Sylvia Lee Hackl, Appellate Counsel; Martin J. McClain, Asst. Appellate Counsel; Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div.; John W. Renneisen, Senior Asst. Atty. Gen.; Thomas C. Wilson, Sheridan County Atty.; Patrick Day, Legal Intern, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN, and CARDINE, JJ.

BROWN, Justice.

Appellant William Eckert was convicted by a jury of second-degree murder, defined in § 6–2–104, W.S.1977 (June 1983 replacement).[1] In the five issues raised he contends:

"I. The trial court erred in failing to instruct the jury on the lesser included offense of manslaughter.

"II. The trial court abused its discretion and impinged upon appellant's right to meaningful review when it refused to allow the instruction conference to be recorded.

"III. The trial court abused its discretion when it denied appellant's request for a jury view.

"IV. The trial court abused its discretion when it refused to allow appellant to present surrebuttal.

"V. The course of appellant's trial failed to comport with the requirements of Krucheck v. State."

We will affirm.

Robert "Crash" Corcoran and William "Josh" Eckert, met at an AA (alcoholics anonymous) meeting in 1979. Crash and Josh had an association that might loosely be characterized as a friendship which mainly revolved around their lifestyle as alcoholics. They spent a considerable amount of time trying to get "on the wagon," only to fall therefrom. Crash is now dead, and Josh stands convicted of second-degree murder.

Evidence produced at trial indicated that Crash threatened to kill Josh, mentioning knives and guns. There is testimony that Crash frequently offered to "whup" appellant. Crash was also known to Paula

---

1. "Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary * * *."

Amende, girlfriend of appellant Josh. Crash had worked on Ms. Amende's car and had some tools stored in her garage behind her residence. Crash harassed Josh and his girlfriend several times by calling them in the middle of the night. According to defense witnesses, Crash had an obsession about "whupping" Josh. He expressed his desire or intent more than a few times.

Early in the morning of April 12, 1983, appellant and his girlfriend were awakened by the sound of a vehicle near Ms. Amende's apartment. Both appellant and Amende got up, but the latter went back to bed. Appellant recognized Crash as the driver of a van parked in front of the apartment. Crash drove the van around the block and into an alley behind the apartment. He then parked the van in the alley and entered a shed next to the garage where he had previously stored some of his tools. Appellant heard loud noises coming from the shed so he dressed and went outside, carrying a baseball bat. Appellant confronted Crash in the shed; Crash left the shed in considerable haste and headed for his van. The final confrontation took place as Crash was entering the van. Appellant smashed a hole in the windshield with the baseball bat and battered the driver's side window. He then administered several blows with the bat to the body of Crash. Medical testimony indicated that Crash suffered a shattered skull, crushed larynx, broken jaw, severely bruised abdomen and injuries to his arms and hands. Sometime before, during or after this rain of blows, appellant grabbed Crash by the shirt and pulled him out of the van. Robert "Crash" Corcoran died thirteen days later from the injuries inflicted by appellant.

At trial appellant admitted the killing but claimed self-defense. Sufficiency of the evidence is not an issue here, nor does appellant claim that he was restricted in presenting his defense.

## I

During the instruction conference the state tendered a lesser included offense instruction on manslaughter. Appellant, however, strongly objected to this instruction. The court was advised that

" * * * the defendant had signed a memo acknowledging that he understood the difference in the penalties between Second Degree Murder and Manslaughter and had advised his defense attorneys to proceed under the theory that the facts established only that there had either been a purposeful taking of the life of the deceased or that it was self-defense and therefore the lessor [sic] offense of Manslaughter did not apply in this case." (defense counsel affidavit)

The trial court did not give the state's proposed instruction on the lesser included offense of manslaughter because appellant opposed the instruction. There was no objection to the trial court's determination. It is agreed by the parties that absent appellant's desires, an instruction on manslaughter would have been appropriate under our ruling in *State v. Selig*, Wyo., 635 P.2d 786 (1981).

On appeal appellant now argues that the trial court had a duty to instruct on manslaughter even in the face of his spirited objection to such an instruction at trial. We cannot agree. Appellant cites authority to the effect that a trial court has the obligation to raise " * * * on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial. * * * " *Taylor v. Commonwealth of Kentucky*, 436 U.S. 478, 489, 98 S.Ct. 1930, 1937, 56 L.Ed.2d 468, 477 (1978).

Appellant cites cases holding that the trial court must give lesser included offense instructions if requested, and further, must give such instructions on its own initiative in either situation if the evidence warrants such instruction. No cases are cited, however, for a holding that a trial court must force upon a defendant an instruction that he objects to.

In support of his argument on this issue appellant relies principally on *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65

L.Ed.2d 392 (1980). In *Beck*, an Alabama statute prohibited the use of lesser included offense instructions in capital cases. The United States Supreme Court held that the death penalty could not be imposed under those circumstances. The narrow ruling in that case was specifically limited to capital cases. Furthermore, the question there was not whether a trial court must force an instruction on a defendant who objects to it as is the question here. We do not disagree with Beck, but merely determine that the rule is not applicable to this case.

Appellant cites *State v. Case*, 228 Kan. 733, 620 P.2d 821 (1980); *State v. Heitman*, Mo.App. 613 S.W.2d 902 (1981); *State v. Brown*, 300 N.C. 41, 265 S.E.2d 191 (1980), for a rule that requires a trial court to instruct on lesser included offenses even though no specific request is made. We declined to address that question in *State v. Selig*, supra, nor are we concerned with it here. The cases cited by appellant are not authority for the question we need to answer.

Appellant argued at trial that the case was either self-defense or second-degree murder as charged, and that a lesser included offense instruction was inappropriate. He reasoned that if he was acting in self-defense he was not guilty of any crime. Apparently appellant's theory of defense was that an instruction on manslaughter might encourage the jury to compromise. Appellant's strategy was not successful at trial. Neither can we permit appellant to subvert the judicial process. Ordinarily, courts will not prohibit a defendant from choosing his own trial tactics and substitute the court's idea of how a defendant should defend himself.

■ We hold that a defendant can effectively waive an instruction on a lesser included offense as long as he does so knowingly and there is no impediment to such waiver. Appellant does not contend that he suffered any impediment that would detract from knowingly waiving an instruction on manslaughter. His only contention

is that the judge was obligated to force the instruction on him for his own good.

■ The rule on waiver of fundamental rights is not novel. Frequently defendants waive a jury trial, waive their right against self-incrimination and waive their right to counsel. We hold that it was not error for the trial judge to honor appellant's request and not instruct on the lesser included offense of manslaughter.

## II

■ Appellant requested that the instruction conference be recorded; however, the trial court refused to permit the recording of those proceedings. Appellant assigns this refusal as error. He was not restricted from making a record of his objections to the instructions given or to the instructions offered but not given. He does not complain that he was restricted in this manner. Appellant appears to be arguing that he was prejudiced because error may have occurred in the instruction conference. However, he did not bring to our attention any errors or untoward contact that took place at the conference.

We must assume that if anything inappropriate took place at the instruction conference appellant would tell us about it. Appellant was aware of his right to supplement the record under Rules 4.03 and 4.04, Wyoming Rules of Appellate Procedure. He in fact did supplement the record under these rules, but did not advise us of any prejudicial thing that occurred at the conference. The better practice would be to record the instruction conference. We hold, however, that under the circumstances it was not reversible error to prohibit the recording of the conference.

## III

■ Appellant maintains that he understood that the trial court would permit a view of the premises where the deceased was beaten to death, and further, that he

did not prepare detailed diagrams of the premises because of that understanding.[2]

Despite appellant's understanding, the trial court stated:

"Well, Mr. Wolfe, the Court never said to you or anybody else, 'Sure, we'll go down and view the premises.' I asked the sheriff if he had people available depending upon how the lawsuit developed, but it's the Court's opinion that with the evidence that was introduced that taking the jury down there would not help the jury but it would confuse the jury because there are a great many things that have not been testified to. * * * "

The court's explanation of the so-called understanding is consistent with the usual course of events in a trial. It is appropriate for the court to reserve a ruling on a request to view the premises. Ordinarily the court would not know if a view was appropriate until it heard the evidence.

Section 7-11-204, W.S.1977, authorizes the court to allow a jury view whenever it deems a view proper. In *Lansing v. State*, Wyo., 669 P.2d 923 (1983), we said that the purpose of a jury view was to help the jury understand the evidence already presented, not to provide new evidence. We further said that it is within the sound discretion of the trial court to determine when to grant a jury view and that the court's determination to refuse a jury view will be reversed only upon a showing of an abuse of discretion.

In his brief appellant states that "the issue at trial concerned appellant's thoughts at the time he attacked Corcoran." No view was needed for the jury to understand appellant's contention that he thought Crash Corcoran was going for a gun. The evidence was not complex, nor was the surrounding physical area impor-

tant to a determination of the issue in this case. The trial court did not abuse its discretion in not permitting a view of the premises.

## IV

After the defense rested its case in chief the trial deteriorated and got into matters of slight interest but of no relevance. The state started this digression by producing several witnesses in rebuttal who said Crash Corcoran, the deceased, was puny and runty. At the close of state's rebuttal testimony appellant offered a surrebuttal witness. Apparently the trial court initially denied appellant's request to put on surrebuttal testimony although the record does not show the court's denial.

The next morning appellant made an offer of proof and stated that he was prepared to call several witnesses who would testify that the deceased was a "normal sized individual and had no physical disabilities." Appellant named several potential witnesses, but could not think of the name of one. After this offer of proof the court said, "Okay. We'll call your witnesses." Appellant said, "I don't have the witnesses here today. But I suppose I could go find them." The court then inquired about the relevancy of appellant's proposed testimony. Appellant said, "I don't know whether it's important or not." Appellant later said, "I'm going to have to have half an hour or so to get the witnesses lined up if I can get them. I assume I can find some of them." The court then observed that all the witnesses' testimony would likely be repetitive. Appellant agreed and said, "Probably."

The court denied the motion for a continuance, likely knowing from experience that a half hour really meant a half day.[3]

---

**2.** We do not know that appellant ever explained to the court his reason for not preparing detailed diagrams. In any event, several witnesses testified concerning the shed, garage, van and other physical features in the area of the fatal beating and how they were related. The testimony of these witnesses indicates they occasionally referred to a diagram or drawing although it was never introduced into evidence.

**3.** Lawyers almost always say to the court at the commencement of cross-examination or redirect, "I just have a couple of questions." The couple of questions then expand into several dozen.

The court suggested that appellant could be recalled to give testimony with respect to the physical characteristics of the deceased. Appellant declined to be recalled for "tactical" reasons and did not present any surrebuttal evidence.

 Generally a decision to allow surrebuttal or not is within the sound discretion of the trial court. *Janski v. State*, Wyo., 538 P.2d 271 (1975). We cannot say, under the circumstances, that the trial court abused its discretion by not allowing appellant a continuance to find surrebuttal witnesses. The jury was waiting and had been advised that court would convene. Appellant did not have his witnesses available, and did not know where to find them or how long it would take. Furthermore, the proposed evidence was probably repetitive. We do not see the probative value of the evidence proposed by appellant. Just because the state produced evidence without objection as to the physical characteristics of the deceased which was not relevant to the case does not give appellant an automatic right to produce equally irrelevant evidence. We know of no off-setting error rule. Appellant's own testimony was that the "imminent danger" he believed existed came from a gun or knife, and not from the threat of a physical beating. There was nothing in the testimony at trial indicating that appellant feared the deceased because of his size, physical characteristics and state of health.

The deceased talked a lot about "whupping" people or a prominent part of them, but there was no evidence that he ever did it or that appellant was afraid of a physical beating. Appellant's self-defense theory was that the deceased was going for a gun or knife. We do not believe Crash's physical size or the state of his health was relevant.

If appellant thought surrebuttal testimony was important he surely could have taken the stand again and described the physical characteristics of Crash Corcoran. Appellant knew Crash as well as anyone. They had mused over alcohol many times. We do not understand the practical objec-

tion to appellant testifying again. He had already testified extensively on direct, cross-examination and redirect. It appears that both parties wanted to have the last word. The court had a duty to terminate this sort of irrelevant evidence.

## V

 The court instructed the jury in Instruction No. 9 that:

"The element of malice may be inferred by the jury from the use of a deadly weapon in a dangerous and deadly manner if the facts and circumstances indicate such. Malice may also be inferred from all of the other facts and circumstances surrounding an alleged event."

In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the jury was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The United States Supreme Court disapproved this instruction and held that conclusive or mandatory instructions which would lead a reasonable juror to believe that a presumed fact must be found violates the due process clause of the Fourteenth Amendment.

In *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), decided within two weeks after *Sandstrom,* the Court approved an instruction that advised the jury that it "may infer" the presumed fact.

In *Krucheck v. State*, Wyo., 671 P.2d 1222 (1983), consistent with Sandstrom, we disapproved an instruction that said, " 'The use of a deadly weapon in a deadly or dangerous manner raises the presumption of malice.' "

Rule 303(c), Wyoming Rules of Evidence provides:

"*Instructing the jury.*—Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an

element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt."

Instruction No. 9 in the case before us is in permissive language, thus, distinguishing it from both Sandstrom and Krucheck. In these two cases the language in the instructions was mandatory or conclusive in nature. In conjunction with the permissive language of the trial court's Instruction No. 9, the other instructions read together satisfy the mandate of Rule 303(c), supra. Instruction No. 5 indicates that malice is an element of the crime of second-degree murder. The same instruction advises that each element must be proved beyond a reasonable doubt. Instruction No. 14 instructs the jury at least twice that the state has the burden of proving each element of the crime charged beyond a reasonable doubt.

Probably we are not obligated to consider the fifth issue in appellant's assignment of error. While appellant objected to Instruction No. 9, he did so on the basis that it was repetitious and not that it was a Sandstrom error involving a mandatory presumption. Rule 51, Wyoming Rules of Civil Procedure, requires that a party cannot assign error on an instruction unless he objects "stating distinctly the matter to which he objects and the grounds of his objection." [4]

We hold that in the case before us there was no Sandstrom error and that the trial court comported with the rules in *Sandstrom, Ulster County* and *Krucheck.* Further, we hold that the mandate set out in Rule 303(c), supra, was complied with.

■ Appellant raises another issue that was never before the trial court. Counsel for the state in summation said, "The beating of any individual with a baseball bat just that very act itself has to imply malice unless there is some indication of some type of justification for it." No objection was made to this remark nor was a motion for a mistrial made. Appellant urges that we consider this statement under the plain-error doctrine citing *Browder v. State,* Wyo., 639 P.2d 889 (1982). In that case this court reversed a conviction because of a series of improper remarks made by the prosecuting attorney in his closing argument. Quoting *Hampton v. State,* Wyo., 558 P.2d 504 (1977), we said:

"'In order to invoke the plain-error doctrine, several elements must first be established. First, the record must clearly show what occurred at the trial without resort to speculation. Second, the existence of a clear and unequivocal rule of law must have been violated in an obvious way. And finally, this violation must have adversely affected some substantial right of the accused.'" *Browder v. State,* supra, at 895.

We said in *Browder* that the first two elements necessary to invoke the plain-error doctrine were clearly present. We then said "The continuous disregard of the rules by the prosecutor was so great as to adversely affect the defendant's substantial right to a fair trial." We thus held that all the elements set out in *Hampton v. State,* supra, to invoke the plain-error doctrine were satisfied. Here, we do not believe that the last two elements necessary to invoke the plain-error doctrine have been satisfied.

■ The remark made by the state was a strained argument attempting to illustrate how the court's instruction applied to the facts in evidence. Counsel for the state was really arguing his theory rather than repeating the instruction. There was no cumulative effect, as in Browder, because of a series of improper remarks. In determining whether plain error has oc-

---

**4.** Rule 31, Wyoming Rules of Criminal Procedure made Rule 51, Wyoming Rules of Civil Procedure applicable to criminal cases.

curred, the facts of the case must be viewed in light of the trial record as a whole and not as to whether any one single incident standing alone would be reversible. *United States v. Grunberger*, 431 F.2d 1062 (2nd Cir.1970).

The jury understood that the state was arguing the facts in connection with the instruction and could not have been misled. The court in its general instruction had previously told the jury that the court in-structed on the law applicable to the case. We must assume that the jury heard, read, understood and followed the court's instructions.

· Affirmed.