**The STATE of Wyoming, Plaintiff,**

**v.**

**Lola Mae KEFFER, Defendant.**

**No. 91–9.**

Supreme Court of Wyoming.

Sept. 29, 1993.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Dennis C. Cook, Senior Asst. Atty. Gen., for plaintiff.

Wyoming Public Defender Program: Wyatt R. Skaggs, State Public Defender, for defendant.

Before MACY, C.J., and THOMAS, CARDINE, and GOLDEN, JJ., and URBIGKIT, J., Retired.

THOMAS, Justice.

In this case, brought to this court by a Bill of Exceptions, the State of Wyoming (State) seeks a determination that, in a prosecution for second degree murder, the State is entitled to have the jury instructed on the crime of manslaughter as a lesser included offense. The district court, upon objection by Lola Mae Keffer (Keffer), concluded the instructions requested by the State on the lesser included offense of manslaughter should not be given. The district court ruled that, by submitting a written "waiver of included offense instructions," Keffer had the right to prevent the giving of such instructions pursuant to *Eckert v. State*, 680 P.2d 478 (Wyo.1984). The district court also found the evidence in the case would not support the giving of the instructions on a lesser included offense. The major thrust of the State's concern is whether, by submitting such a waiver, a defendant in a criminal case can veto the giving of the lesser included offense instructions. We hold that the district court erred in refusing to give the lesser included offense instructions on the crime of manslaughter in this case.

The issues presented in this bill of exceptions proceeding are:

> Whether the State of Wyoming is entitled to instructions on lesser included offenses where the Defendant waives said instructions in writing and objects to the giving of manslaughter instructions when the information charges second degree murder; and

> Whether the District Court Judge usurped the jury's function to determine the facts by ruling that the evidence of self defense could not support a finding that no malice existed but the killing was not justifiable.

Keffer, as the defendant in this proceeding, states the issue in this way:

> Whether in a second degree murder prosecution, an instruction on voluntary manslaughter must automatically be given where the evidence could not support a conviction for the lesser crime.

On August 3, 1990, Keffer shot and killed her nephew, Duane Jackson. Jackson went to Keffer's home in Laramie around 10:00 P.M. asking for money. On previous occasions, Keffer had complied with Jackson's demands, giving him money from a small inheritance and her tax refund. She also had paid Jackson to do some auto repair work. On this occasion, however, Keffer decided that she would refuse Jackson's request and would use an audio tape recording of his behavior to seek a restraining order. Soon after he arrived, Jackson discovered the tape recorder, stopped the tape, and shouted at Keffer, "I'm on to your little game." Keffer grabbed the recorder and ran into her bedroom to get it out of Jackson's reach. When Jackson followed her into the bedroom, Keffer directed her handicapped husband to call the police. Jackson then withdrew from the bedroom and blocked the husband from reaching the telephone.

Keffer removed a gun from her husband's dresser. She walked into the living room and cocked the single action revolver while telling Jackson to leave. At the trial, Keffer testified she shot Jackson with a .44 magnum hollow point bullet in self defense because Jackson menaced and threatened her. After the bullet struck Jackson, he exclaimed: "Dear God, I never would have hurt you." The next day, Jackson died from hypovolemic shock, the extreme loss of blood caused when the bullet lacerated a major abdominal blood vessel.

Keffer was charged with second degree murder for purposely and maliciously, but without premeditation, killing a human being in violation of Wyo.Stat. § 6–2–104 (1988).[1] During the trial, the State introduced witnesses and evidence identifying Jackson as the victim and demonstrating he died as the result of a single gunshot wound from a gun fired at close range by Keffer. Jackson's widow testified he was preparing to take Keffer to court for failing to pay him for the auto repair work. A co-worker of Keffer's testified that, during lunch about nine hours prior to the shooting, Keffer appeared agitated and upset because she knew Jackson was coming to her home that night. The co-worker testified that Keffer said she was prepared for Jackson's visit and had a gun with "bullets that have this beebee thing on the end of it that separates when it gets in the body."

The jury was instructed on the elements of second degree murder and upon the law relating to self defense. The State requested instructions on the lesser included offense of manslaughter, but they were refused by the court after Keffer objected and submitted a signed waiver of a lesser included offense instruction.[2] After delib-

---

1. Wyo.Stat. § 6–2–104 (1988) provides as follows:

> Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

2. The waiver was patterned after *Eckert v. State*, 680 P.2d 478 (Wyo.1984), and read:

> A. STATEMENT OF ATTORNEY
> I, Wyatt R. Skaggs have advised my client, Lola Keffer, who appears intelligent and of sound mind of her right to request instructions to the jury concerning the lesser included offense of manslaughter. I have further advised her that manslaughter carries a poten-

erating less than three hours, the jury returned a verdict of not guilty of the charge of second degree murder. This Bill of Exceptions then was brought to resolve the questions of law presented by the dispute over the right to the instruction on the lesser included offense of manslaughter.

The State argued that, under *State v. Selig*, 635 P.2d 786 (Wyo.1981), both the State and the defendant had an equal opportunity to request lesser included offense instructions. Keffer argued that her waiver, under the rule of *Eckert*, precluded the State from requesting the lesser included offense instructions. The response of the State was that, in *Jahnke v. State*, 692 P.2d 911 (Wyo.1984), decided subsequent to *Eckert*, the validity of the *Selig* analysis with respect to the component of mutuality was reaffirmed.

The district court, while acknowledging the right of both sides to request instructions on lesser included offenses, ruled that an objection by the defendant accompanied by an appropriate *Eckert* waiver entitled the defendant to veto the lesser included offense instructions. Ruling in favor of Keffer, the district court ordered that the lesser included offense instructions on voluntary manslaughter would not be given. The district judge distinguished the relevant cases in this way:

> *Eckert* carves out, it seems to me, a post-*Selig* exception to any reading of *Selig*,

or an explanation of that factor called mutuality. And the way I read *Eckert* is that if a defendant if properly informed and fully advised, wishes to waive the lesser includeds, then defendant is entitled to do so. The [S]tate did not choose to charge manslaughter so in that sense the case has been defended on the basis of the second degree murder charge which the [S]tate did charge, so the court concludes that the waiver is effective and is otherwise in compliance with *State v. Eckert* and should be given effect.

As an alternate premise, the court also ruled that, based upon the evidence at trial, "there has not been any significant evidence directed to the form of manslaughter that is requested, namely a killing in the heat of passion."

We hold that the trial court erred in refusing to give the lesser included offense instructions on the ground that *Eckert* afforded the defendant the right to waive them and the State would be bound by such a waiver. Properly applied, *Eckert* does not extend to affording a defendant in a criminal case the right of veto of lesser included offense instructions. Affording *Eckert* that interpretation effectively abrogates the rule of mutuality adopted in *Selig*. Whether the evidence would justify the giving of the instructions in this instance is a difficult question, but we also hold that, under the evidence of record, the instruc-

tial penalty of up to twenty years in the Wyoming State Women's Penitentiary. I have advised her that manslaughter would be a likely compromise verdict at trial.

FURTHER, I have advised her that should she be convicted of second degree murder the penalty would likely be a penitentiary sentence of a minimum of twenty years. She has advised me that she wishes no lesser included offense instructions submitted on her behalf by the defense, prosecution, or the Court. I have advised her that her waiver is irrevocable on appeal as set forth by *Eckert v. State*, 680 P.2d 478 (Wyo.1984).

DATED this 3rd day of December, 1990.
Wyatt R. Skaggs (s)
Wyatt R. Skaggs
Attorney for Defendant

B. STATEMENT OF LOLA KEFFER

I, Lola Keffer, knowingly and intelligently do hereby waive my right to have lesser included offense instruction of manslaughter

submitted on my behalf and have advised my attorney to proceed under the theory that the facts established only that there had either been a purposeful and malicious taking of life of Duane Jackson or that it was self-defense and therefore the lesser included offense of manslaughter does not apply in this case pursuant to the dictates of *Eckert v. State*, 680 P.2d 478 (Wyo.1984). I further understand that should the jury compromise on a manslaughter verdict my penitentiary time, if any, could be much lower than if I were convicted of second degree murder where I would receive at least twenty years if I received a penitentiary term.

I further understand my decision here is irrevocable under *Eckert, Id.*

DATED, this 3rd day of December, 1990.
Lola M. Keffer (s)
Lola Keffer
Defendant

tions on the lesser included offense of voluntary manslaughter should have been given.

■ We first consider whether the Bill of Exceptions is properly before this court. After the verdict was returned, followed by a judgment of acquittal, the prosecuting attorney submitted a Bill of Exceptions to the district court pursuant to WYO.STAT. § 7–12–102 (1987). This is the only method available for the State to seek a determination of governing law in any similar, pending or future case. *State v. Heberling*, 553 P.2d 1043 (Wyo.1976); WYO.STAT. § 7–12–104 (1987). The decision of this court upon review pursuant to a bill of exceptions does not affect the verdict of the jury in Keffer's case in any way. WYO.STAT. § 7–12–104(b) (1987).

■ There is a statutory requirement that the bill of exceptions must be presented to the trial court to certify the correctness of its contents before it is filed with this court. WYO.STAT. § 7–12–102. In this instance, the certification is imperfect because what the district judge certified was the "Application for Permission to File Bill of Exceptions," but the "Bill of Exceptions" itself was not certified. The language of the document that was certified is parallel to the language of the "Bill of Exceptions" so that the flaw in the certification is, at most, an irregularity that does not preclude jurisdiction in this court. *Selig*. In addition, the document certified does incorporate the "Bill of Exceptions" by reference and attachment, so, conceptually, the certification would reach to both documents. There is no question that the district judge to whom the "Bill of Exceptions" was presented intended to certify the "Bill of Exceptions" because the same attorney who had represented Keffer at trial was appointed to argue the case against the State. WYO.STAT. § 7–12–103 (1987).

■ The statutory jurisdiction conferred upon this court with respect to a bill of exceptions requires substantial, rather than strict, compliance. *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906).

We are satisfied the language of the Application in this instance sufficiently parallels the language of the Bill of Exceptions to make the flaw in certification at most an irregularity and does not prevent this court from assuming jurisdiction.

We address first the primary question of waiver. The trial court ruled that, because of our holding in *Eckert*, if properly informed and fully advised, Keffer had the right to waive instruction on any lesser included offenses, and the doctrine of mutuality had, to that extent, been abrogated. In Wyoming, convictions for lesser offenses are authorized by rule. "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." WYO.R.CRIM.P. 31(c) (codified as WYO.R.CRIM.P. 32(c) at the time of trial) [hereinafter RULE 31(c) or WYOMING RULE 31(c)]. Our rule language is identical to FED.R.CRIM.P. 31(c) [hereinafter FEDERAL RULE 31(c)] and, for that reason, federal court decisions interpreting FEDERAL RULE 31(c) represent highly persuasive authority. *Jahnke*, 692 P.2d 911. *See also, B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809 (Wyo.1992); *Apodaca v. State*, 627 P.2d 1023 (Wyo.1981). The description of an offense necessarily included in the offense charged set forth in RULE 31(c) perhaps makes conventional reference to a "lesser included offense" somewhat imprecise, but we shall use that familiar reference for our discussion.

■ standard in Wyoming for determining entitlement to a lesser included offense is drawn from the standard in the federal courts. In *United States v. Chapman*, 615 F.2d 1294, 1299 (10th Cir.1980), cert. denied, 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980) (*quoting United States v. King*, 567 F.2d 785 (8th Cir.1977), cert. denied, 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978)), the United States Court of Appeals for the Tenth Circuit articulated these required elements in order to justify instruction on a lesser included offense:

(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense, and (5) there is mutuality, *i.e.,* a charge may be demanded by either the United States or the defense.

The court in *Chapman* separately stressed that, if the trial evidence demonstrates no rational basis upon which the jury could find the defendant guilty of the lesser included offense, the instruction need not be given. The elements outlined in *Chapman* were adopted in *Selig*, 635 P.2d 786.

The court permitted the State to pursue a bill of exceptions in *Selig* and proceeded to determine if the trial court erred in refusing to give lesser included offense instructions for second degree murder and voluntary manslaughter requested by the prosecution. Selig had been charged only with three counts of first degree murder. The court explained that the purpose of RULE 31(c) is both to aid the prosecution if the proof presented at trial fails to establish all of the elements of the charged offense and also to give the defendant the benefit of a less drastic alternative than a choice between conviction and acquittal on the charged offense. *Selig.* We held that the requested instruction should have been given because all five of the *Chapman* elements were present and satisfied. *Selig.* The holding of *Selig* is that neither side in a criminal case has a unilateral right to go to the jury on an all-or-nothing approach.

*Eckert* is distinguishable. Eckert was charged with second degree murder, and the State requested a lesser included offense instruction on manslaughter. Eckert objected to that instruction, contending the facts established that there had "either been a purposeful taking of the life of the deceased or that it was self-defense." *Ec-kert*, 680 P.2d at 480. The trial court did not give the State's requested manslaughter instruction because of Eckert's waiver, and the State did not object when Eckert elected to waive the giving of the instruction on manslaughter. Eckert's strategy, however, was not successful, and he was convicted of second degree murder. He then appealed, contending that, despite his waiver, the trial court had a duty to instruct on manslaughter.

The conflicting principles that converge in *Eckert* were the defendant's right to present his theory of the case and the principle preserved in RULE 31(c) permitting the instruction on "necessarily included" offenses. Eckert's theory was that he was either guilty of second degree murder or he had acted in self defense, and he contended it was inconsistent to offer the instruction on manslaughter, apparently fearing the jury might be encouraged to compromise. The issue was whether the defendant enjoyed the right to waive an instruction on a lesser included offense. In reviewing his conviction, this court reasoned Eckert had no right to subvert the judicial process by initially waiving an instruction at trial and then contending on appeal that, despite the waiver, there was a duty to instruct. Specifically, the court held "that a defendant can effectively waive an instruction on a lesser included offense as long as he does so knowingly and there is no impediment to such waiver." *Eckert*, 680 P.2d at 481. In arriving at the *ratio decidendi* in *Eckert*, however, it is imperative to recall that the State, although it had requested the instruction, did not object when Eckert elected to waive.

In *Eckert*, the court only mentions *Selig* in noting that the parties agreed that, absent Eckert's desires, an instruction on manslaughter would have been appropriate. The five *Chapman* elements were not applied in the *Eckert* case. Mutuality was not an impediment there because of the failure of the State to object when the trial court permitted Eckert to waive the instruction. The rule in *Eckert* is limited to the holding that the defendant can waive an instruction on a lesser included offense.

It does not hold that such waiver forecloses the State from requesting and obtaining an instruction in an appropriate case. Neither does *Eckert* hold that a theory of the case presented by the defendant may simultaneously prevent the presentation of apparently inconsistent jury instructions requested by the prosecution. The trial court's application of *Eckert* in this case reflects an erroneous conclusion with respect to the holdings in *Eckert*. We are satisfied that *Eckert* does not justify the failure to give the lesser included offense instruction in this case.

We acknowledge that confusion over the proper standards to invoke in evaluating mutuality and which offenses are "necessarily included" within a charge is understandable. Wyoming and federal precedent share a diverse collection of often-criticized rules, analyses, and results. The Supreme Court of Iowa said that the lesser included offense doctrine is "fraught with confusion because of the doctrine's elusiveness in its definition and application." *State v. Jeffries*, 430 N.W.2d 728, 730 (Iowa 1988). A review of applicable precedent discloses the failure to achieve a clarified approach and the need to adjust that failure.

There is not a clear consistency in this court in applying the *Chapman* elements. In *Balsley v. State*, 668 P.2d 1324 (Wyo. 1983), which was the first case to follow *Selig*, we referred to the elements articulated in *Chapman* in analyzing whether homicide by vehicle was a lesser included offense of aggravated homicide by vehicle. Specifically, the court focused on the second *Chapman* element which requires that "the elements of the lesser offense are identical to part of the elements of the greater offense." *Chapman*, 615 F.2d at 1299. We appeared to make that standard more strict when we said a crime is not necessarily included within another statutory offense "unless all of the elements within the claimed lesser offense are to be found in the greater, and unless the greater offense cannot be committed without also committing the putative lesser offense." *Balsley*, 668 P.2d at 1329. This

language is consistent with *Chapman*, however, if the word "part" may mean some. In *Jahnke*, 692 P.2d 911, Balsley and element two of the *Chapman* formula were applied, and we determined voluntary manslaughter is a lesser included offense of first degree murder. In *Jahnke*, we also dealt with the third element of the *Chapman* test. The element, as stated in *Chapman* and quoted in *Selig*, is that there be "some evidence that would justify conviction of the lesser offense." *Selig*, 635 P.2d at 790. In *Jahnke*, a limiting explanation of this third element was presented resorting to prior case law: " 'the trial court should only give such instructions as arise from the evidence and that when the evidence shows that the defendant is either guilty or not guilty of the higher grade of the offense, the court is not required to instruct on the lesser offense.' " *Jahnke*, 692 P.2d at 920 (quoting *Oldham v. State*, 534 P.2d 107, 109 (Wyo. 1975)).

In *Amin v. State*, 694 P.2d 119 (1985), the *Balsley* approach was invoked. Amin was convicted of aggravated robbery and kidnapping, and she appealed the denial of lesser included offense instructions for the offenses of simple assault, battery, reckless endangering, larceny, and simply robbery. After comparing the statutory elements, the court held that simple assault, battery, and reckless endangering were not lesser included offenses of aggravated robbery and kidnapping. *Amin*. In considering the question whether there was evidence that would justify conviction for any of the claimed lesser offenses, this court stated the required view of the evidence in this way: "A defendant is entitled to lesser included offense instructions when a rational view of the evidence would permit a finding of guilt of the lesser offense and not guilty of the greater offense." *Amin*, 694 P.2d at 123–24. Using this standard as stated, we held that no evidence at trial justified any instruction for lesser included offenses. *Amin. See also Amin v. State*, 695 P.2d 1021 (Wyo.1985).

In *Seeley v. State*, 715 P.2d 232 (Wyo. 1986), three different formulations were in-

voked to deal with a lesser included offense. The *Balsley* rule was restated to read "every element of the lesser offense must be included in the greater, that is one cannot commit the greater offense without also necessarily committing the lesser offense." *Seeley,* 715 P.2d at 238. That rule was applied to determine second degree and third degree sexual assault were not lesser included offenses of first degree sexual assault because they incorporated elements not included in first degree sexual assault. *Seeley.* Furthermore, we invoked the *Chapman* elements to hold that attempted sexual assault was not a lesser included offense of first degree sexual assault. *Seeley.* Finally, the evidence formulation found in *Amin* was applied to hold that, under the defense theory of the case, instructions on assault were not supported. *Seeley.*

For the first time in this line of cases, the court defined a standard of appellate review in *Miller v. State,* 755 P.2d 855 (Wyo.1988). The standard was abuse of discretion of the trial court in determining whether to deny a lesser included offense instruction. The court referred to the *Chapman* elements as the "established standard for instructing the jury" on lesser included offenses. *Miller,* 755 P.2d at 865. The analysis there, however, was focused on the lack of evidence supporting instructions on aiding and abetting manslaughter. *Miller.*

Later, in *Eatherton v. State,* 761 P.2d 91 (Wyo.1988), we held it to be reversible error for the trial court to deny a requested lesser included offense instruction when all five *Chapman* elements were satisfied. *Driskill v. State,* 761 P.2d 980 (Wyo.1988), also invoked the five *Chapman* elements. The next year, however, in *Loomer v. State,* 768 P.2d 1042 (Wyo.1989), the test articulated in *Balsley* was applied to determine if a portion of the kidnapping statute created a lesser included offense.

In *Keller v. State,* 771 P.2d 379 (Wyo. 1989), the court, in effect, utilized a *de novo* review as the proper appellate standard for review for lesser included offenses. The State there argued the plain error standard had to be followed because, after the trial judge denied the requested defense instruction, no objection had been preserved. We held, however, the instruction request could be reviewed without invoking the plain error standard. *Keller.* We reasoned that a lesser included offense instruction is required if justified by the record and the request of defense counsel for the instruction had sufficiently explained it and justified it without more argument. *Keller.* The court then applied the five *Chapman* elements and determined the requested lesser included offense instruction on criminal trespass was supported by the evidence at trial. *Keller.* Some eight months later, in *Muniz v. State,* 783 P.2d 141 (Wyo.1989), the court held that the failure to object at trial to the denial of a request for a lesser included offense instruction precluded review unless plain error was present. This result seems diametrically opposed to *Keller.*

Moving ahead, the court alluded to the unsettled nature of Wyoming's lesser included offense jurisprudence in *Craney v. State,* 798 P.2d 1202 (Wyo.1990). Without noting the origin of the instruction, the *Seeley* formulation was applied in *Craney* to hold that third degree sexual assault was not a lesser included offense of first degree sexual assault. The court ruled that giving a trial instruction on third degree sexual assault constituted plain error. *Craney.* Plain error was the proper standard of review because the instruction was allowed and no objection was made, as distinguished from the earlier cases in which the lesser included offense instruction was offered and denied. In *Pearson v. State,* 818 P.2d 1144 (Wyo.1991), the *Chapman* elements were applied, and the court ruled that the trial evidence simply did not support the requested lesser included offense instruction. Then, in *Derksen v. State,* 845 P.2d 1383 (Wyo.1993), a plain error standard of review was applied to determine that a given instruction on the crime of taking immodest, immoral, or indecent liberties with a child as a lesser included offense of sexual assault in the second degree was improper.

Our witness is that the federal courts have repeatedly peered into murky waters in analyzing what offenses are "necessarily included." In the United States Court of Appeals for the Tenth Circuit, a formulation was adopted that has become known as the "inherent relationship test." In *United States v. Pino*, 606 F.2d 908 (10th Cir.1979), that test was adopted from *United States v. Whitaker*, 447 F.2d 314 (D.C.Cir.1971). The doctrine evolving from *Whitaker* requires consideration of the inherent relationship between the crime charged and a lesser offense proven at trial. That doctrine permitted the defense greater freedom in requesting lesser included offense instructions than was given to the prosecution, thus dispensing with mutuality. *Whitaker.* *Chapman* then was decided one year after *Pino*, and it departed from the inherent relationship standard to favor the five-element test. The Tenth Circuit had not completed its efforts, however, and, in *United States v. Zang*, 703 F.2d 1186 (10th Cir.1982), *cert. denied sub nom., Porter v. United States*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983), it returned to the inherent relationship test.

Still later, the Tenth Circuit adopted a third formulation, again without a stated mutuality component, in *Fitzgerald v. United States*, 719 F.2d 1069 (10th Cir. 1983). The four-element *Fitzgerald* test requires only:

(1) A proper request [for instruction].

(2) The lesser included offense consists of some, but not all, of the elements of the offense charged.

(3) The element differentiating the two offenses is a matter in dispute.

(4) A jury could rationally convict the defendant of the lesser offense and acquit of the greater offense.

*Fitzgerald,* 719 F.2d at 1071.

*United States v. Cooper*, 812 F.2d 1283 (10th Cir.1987) marked a brief return to the inherent relationship standard, but the *Fitzgerald* elements have proven the most durable. *United States v. Joe*, 831 F.2d 218 (10th Cir.1987), *cert. denied*, 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988)

reinstated the four *Fitzgerald* elements. *See also, United States v. Rafaelito*, 946 F.2d 107 (10th Cir.1991); *United States v. Dennison*, 937 F.2d 559 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992); *United States v. Leopard*, 936 F.2d 1138 (10th Cir.1991); *United States v. Haar*, 931 F.2d 1368 (10th Cir.1991); *United States v. Young*, 862 F.2d 815 (10th Cir.1988).

The uncertainty evolving from various precedents and variable application suggests the necessity for a restatement of the rule. This demand emerges from a need for a clarified rule that can consistently be applied by courts in determining: (1) what is a lesser included offense; (2) when should a court instruct on it; and (3) when challenged, what is the proper appellate standard of review. See *Jeffries*, 430 N.W.2d 728.

From analyses similar to the foregoing, commentators have identified three approaches which are used singularly or in various combinations to determine whether a lesser included offense instruction will be given. Those three approaches are: the common law or strict statutory interpretation method; the cognate theory; and the model penal code approach. Christen R. Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am. Crim.L.Rev. 445 (1984).

The strict statutory interpretation method generally follows the *Balsley* standard requiring that all the elements of the lesser included offense must be found in the greater. *Balsley*, 668 P.2d 1324. This approach looks at the statutory elements of the crime and is regarded as the most clearly stated and easiest to apply. Janis L. Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 Brook.L.Rev. 191 (1984). We read *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), as manifesting that the statutory elements approach is the one the Supreme Court of the United States has settled upon.

Criticism of the perceived rigidity of the statutory elements method led, however, to

the development of a more liberal cognate approach. *Jeffries.* Under this formulation, the court looks to the facts alleged in the accusatory pleading (cognate-pleading approach) or to the facts actually proven at trial (cognate-evidence approach), along with the statutory elements in making this determination as to whether a lesser included offense is present. Blair, *supra.* The cognate-evidence theory would encompass the five *Chapman* elements as adopted in *Selig* and, subsequently, used in Wyoming.

The third approach, the Model Penal Code approach, is indeed the most liberal. It allows the instruction when the lesser included offense is established by proof of the same or less than all of the facts required for the greater offense; or when the lesser offense consists of an attempt or solicitation; or when the difference between offenses is only in the respect that a less serious injury or risk of injury or a lesser culpability establishes a lesser offense. Model Penal Code § 1.07(4) (1985). This test has not been widely adopted, but it is partially incorporated in the "inherent relationship" standard. *See Whitaker*, 447 F.2d 314.

The selection of the standard for making a determination as to whether a lesser included offense instruction should be given demands more than a choice of one of these approaches. Often overlooked constraints on each method of analysis are the federal and state constitutional principles of double jeopardy, due process, and notice. Rather than an arbitrary selection, the choice of an approach as to what constitutes a lesser included offense must accommodate to these constitutional mandates.

■ After establishing the right to a presentment or indictment, the Fifth Amendment to the Constitution of the United States directs: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (making double jeopardy provision of the Fifth Amendment applicable to the states through the Fourteenth Amendment). These brief words have spawned many more that have been uttered to either explain, defend, or, in some way, mutate the protection accorded against double jeopardy. The words in Wyoming's constitution are fewer. It provides: "nor shall any person be twice put in jeopardy for the same offense." Wyo. Const. art. 1, § 11. It assures the same protection as the federal constitution. *Hopkinson v. State*, 664 P.2d 43 (Wyo. 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

It often has been iterated that three separate protections are encompassed within the double jeopardy provision. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969) (footnotes omitted). Justice Douglas, in his concurring opinion in *Pearce*, 395 U.S. at 727, 89 S.Ct. at 2089, summarized that "the theory of double jeopardy is that a person need run the gantlet only once."

■ The analysis to be used for identifying a lesser included offense must accommodate to the initial scope of double jeopardy protection granted to a criminal defendant for "once a criminal violation is classified as a lesser included offense of another, the two have traditionally been treated as the same offense for purposes of double jeopardy." Ettinger, *supra*, at 219. "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). Under the doctrine of double jeopardy, if voluntary manslaughter is a lesser included offense of second degree murder, an acquittal on a charge of second degree murder prevents a later trial on a charge of voluntary manslaughter involving the same incident. This result has been long favored in the law. *See Jahnke*, 692 P.2d 911.

After some judicial uncertainty was manifested in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled by United States v. Dixon*, — U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and *United States v. Felix*, — U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), the Supreme Court of the United States has established the role of the lesser included offense doctrine in assuring double jeopardy protection. *Dixon*, — U.S. ——, 113 S.Ct. 2849. The court has settled upon the application of the familiar *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), statutory elements test which directs:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*See, e.g., Cook v. State*, 841 P.2d 1345, 1348 (Wyo.1992) (citing the *Blockburger* test). The *Blockburger* test is the one chosen to determine if offenses have identical statutory elements or if the elements of an offense are identical to some of the elements of a greater offense in reaching a conclusion as to whether it is a lesser included offense. *Dixon*.

It is clear that the *Blockburger* analysis parallels the statutory elements test for lesser included offenses. The application of the *Blockburger* test has nothing to do with the evidence presented at trial. *Corbin*. As *Blockburger* is traced through *Corbin*, *Felix*, and *Dixon*, it is clear that its role is to bar a subsequent prosecution if one of the two offenses is a lesser included offense of the other. That determination is made solely upon a comparison of the statutory elements.

■ Logically, the protection accorded by the double jeopardy clause with respect to multiple punishments should be based upon the same test. The double jeopardy clause prevents a "sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*,

459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The cumulative punishment analysis must be made in the light of the dichotomy in the approach of the Supreme Court of the United States. Historical review of the origin of the *Blockburger* test discloses that its use for multiple prosecution and cumulative punishment is consistent. It was derived from *Morey v. Commonwealth*, 108 Mass. 433 (1871). *Blockburger;* Blair, *supra*. In *Morey*, the court had to determine if a conviction for adultery should be reversed because of the prior conviction for lewd and lascivious cohabitation based upon the same incident. The court considered whether jeopardy for the same offense was involved and announced this test: "A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under · either statute does not exempt the defendant from prosecution and punishment under the other." *Morey*, 108 Mass. at 434. The court then found the offenses were separate and upheld the convictions. It did not review the cumulative sentences imposed in that case because it said that was a matter for the trial court's jurisdiction. *Morey*.

In *Blockburger*, separate offenses were found for individual drug sales. The court specifically approved the imposition of cumulative punishments for each violation of the Federal Narcotic Act based upon congressional intent. It is out of this background that the cumulative punishment analysis using *Blockburger* was conceived.

■ There is a difference in the application of the *Blockburger* test by the Supreme Court, however, based upon its role in determining congressional intent, *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), and the constitutional test of double jeopardy. *Felix*, — U.S. ——, 112 S.Ct. 1377. This dichotomy occurs because of the jurisdiction of the court. *See Cook*, 841 P.2d 1345. It is barred from reviewing a state court's interpretation of a state statute. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct.

1432, 63 L.Ed.2d 715 (1980). This means that, when state statutes are challenged for multiple prosecutions or multiple punishments, the review is conducted using the *Blockburger* test, and the only determination is if the two statutes involve the same offense. *Hunter*, 459 U.S. 359, 103 S.Ct. 673; *Brown*, 432 U.S. 161, 97 S.Ct. 2221. If a federal statute is involved, however, the court is constrained only by the separation of powers doctrine. Its review initially focuses on the interpretation of the federal statute to determine congressional intent. *See Whalen.* Only after interpreting the statute in the light of legislative intent does the court consider the double jeopardy protection. *Albernaz.* Therefore, in questions involving federal law, the *Blockburger* test also has been used as a rule of statutory construction as a part of the means to determine congressional intent. *Albernaz; Whalen.* When a federal statute is involved, the three-step process begins with the initial requirement of an analysis of legislative intent to create separate offenses with separate penalty provisions; if that intent is ambiguous, then the court proceeds to apply the *Blockburger* test as a rule of statutory construction "to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." *Whalen,* 445 U.S. at 691, 100 S.Ct. at 1437. If the cumulative punishment is legislatively authorized, then the court reaches the double jeopardy provision to determine whether there is a violation by actions of courts or the prosecutors. *Hunter.*

This test is consistent with the Supreme Court's long-standing policy that the double jeopardy provision is part of the basic principle that "legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the [legislative branch]." *Whalen,* 445 U.S. at 689, 100 S.Ct. at 1436. The court that exceeds its own authority by imposing multiple punishments not legislatively authorized violates the guarantee against double jeopardy. *Whalen.* This method of analysis was accepted in Wyo-

ming for cumulative punishment issues in *Howard v. State,* 762 P.2d 28 (Wyo.1988).

We are satisfied the statutory elements analysis should be used as the foundation for double jeopardy protection in connection with both multiple prosecutions and multiple or cumulative punishments. Once the offense is classed as a lesser included offense, then a multiple prosecution or a multiple punishment is foreclosed. A more broadly-stated test than the statutory elements analysis for arriving at lesser included offenses such as the inherent relationship standard simply invites frequent questions concerning double jeopardy violations, especially for cumulative punishment. This result should be avoided.

Debate has arisen over whether the refusal of a lesser included offense instruction implicates a due process right because of two decisions of the Supreme Court of the United States. Due process is guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article 1, § 6 of the Constitution of the State of Wyoming. In *Beck v. Alabama,* 447 U.S. 625, 643, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980), the Supreme Court ruled that the failure to give the jury in a capital case the option of convicting on a lesser included offense coupled with the mandatory nature of the death penalty in the statute involved introduced "a level of uncertainty and unreliability into the factfinding process." Beck had been charged with the capital offense of robbery when the victim was intentionally killed. Felony murder was a lesser included offense of robbery-intentional killing, but Alabama law specifically prohibited the judge from instructing the jury on lesser included offenses in capital cases. The Supreme Court noted the import to a defendant of a lesser included offense instruction: "While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard." *Beck,* 447 U.S. at 637, 100 S.Ct. at 2389. The court then found that the unavailability of

a lesser included offense instruction enhanced the risk of an unwarranted conviction and held that Alabama was constitutionally prohibited from withdrawing the jury's option to convict on the lesser included charge. *Beck*. In that opinion, the court refused to extend the decision to noncapital cases.

Groundwork for *Beck* was laid in *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). The court there said:

> Moreover, it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict. Indeed, while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an instruction would raise difficult constitutional questions.

*Keeble*, 412 U.S. at 212–13, 93 S.Ct. at 1997–98 (emphasis in original) (quoted in, *Beck*, 447 U.S. at 634–35, 100 S.Ct. at 2388).

In *Keeble*, the court reversed the conviction for assault with intent to inflict great bodily injury because the trial court erred in denying "the protection afforded by an instruction on a lesser included offense" of simple assault which was warranted by the evidence. *Keeble*, 412 U.S. at 214, 93 S.Ct. at 1998.

 *Beck* and *Keeble* emphasize the essential role of the lesser included offense doctrine in criminal trials. Following the teachings of these cases, we conclude that the failure to give a lesser included offense instruction which was supported by the evidence must constitute error implicating due process guarantees. *See Eatherton*, 761 P.2d 91. For our purposes, this means the lesser included offense test we invoke should be one that may be uniformly applied without complex and confusing analysis.

 The final constitutional limit with respect to our selection of the lesser included offense test is the requirement of notice. An accused must be furnished notice of the criminal charges for which he must make a defense. This is a fundamental component of constitutional due process. *See, Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Selig*, 635 P.2d 786. This court declared, in *Selig*, the notice doctrine's important role in limiting the scope of possible lesser included offenses. If a defendant has no notice of the need to defend against a lesser included offense, an instruction on such an offense would be improper. *Selig*. A proper information is "sufficient notice to the defendant that he may be called to defend the lesser included charge." *Walker v. United States*, 418 F.2d 1116, 1119 (D.C.Cir.1969); Wyo.R.Crim.P. 9, 32(c).

The limitation the notice doctrine imposes on the test to be used to determine if an offense is a lesser included offense of some other offense relates to the breadth of possible lesser offenses. Theories such as the cognate-evidence test and the "inherent relationship" standard allow a broad range of possible lesser included offenses, dependent upon what occurs at the trial, making it much more difficult to determine if notice has been satisfied. Blair, *supra*. The United States Court of Appeals for the Seventh Circuit concluded: "If the determination whether the crimes are sufficiently related is not made until all the evidence is developed at trial, the defendant may not have had notice constitutionally sufficient to support an instruction at the prosecution's request." *United States v. Schmuck*, 840 F.2d 384, 389 (7th Cir.1988) [hereinafter *Schmuck I*]. The strict statutory elements test provides much greater certainty for both the prosecution and the defense in considering whether appropriate notice was given that a lesser included offense relates to the charged offense. *Schmuck I*.

■ The right of both the prosecution and the defense to obtain a lesser included offense instruction is defined by the doctrine of mutuality. *Selig*. The doctrine of mutuality brings balance to the requirement of notice. The notice that is furnished restricts the prosecution to requesting an instruction only for those lesser included offenses that flow from the charged crime, using the statutory elements. Mutuality then directs that the accused has no greater right than the prosecution to obtain or to inhibit a lesser included offense instruction. See *Selig; Schmuck I;* Blair, *supra*. Mutuality, however, is not invoked by those courts that continue to follow the *Whitaker* "inherent relationship" standard or the *Fitzgerald* four-part test.

The Supreme Court of the United States has found that mutuality is implicit in the language of FEDERAL RULE 31(c). *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734, *reh'g denied*, 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989) [hereinafter *Schmuck II* ]. Under Federal Rule 31(c):

> A defendant 'may be found guilty' of a lesser included offense, without distinguishing between a request for jury instructions made by the Government and one made by the defendant. In other words, the language of the Rule suggests that a lesser included offense instruction is available in equal measure to the defense and to the prosecution.

*Schmuck II*, 489 U.S. at 717, 109 S.Ct. at 1451.

We agree with this approach, and we hold that the language of WYOMING RULE 31(c), which is identical to FEDERAL RULE 31(c), implies and requires that both prosecution and defense have an equal right to a lesser included offense instruction.

In *Schmuck II*, the Supreme Court of the United States invoked the traditional statutory elements test for the federal court's approach to lesser included offenses. The court there noted that the statutory elements approach directly corresponds to the "necessarily included in the offense charged" language of RULE 31(c), and it upheld the common law tradition comparing the statutory elements. *Schmuck II*. The most recent pronouncement in *Dixon*, — U.S. —, 113 S.Ct. 2849, is consistent with this rule. The statutory elements test leads to certainty and predictability, which was a third factor favoring its adoption. "Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly." *Schmuck II*, 489 U.S. at 720, 109 S.Ct. at 1453.

■ Based upon this comprehensive review of the cases in our state, relevant federal precedent, and the mandates of the constitutions of the United States and Wyoming, as well as the persuasive impact of the position of the Supreme Court of the United States, we are convinced that the statutory elements test is the one to invoke

to determine whether a lesser included offense instruction under WYOMING RULE 31(c) is appropriate. "Under this test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under [WYOMING RULE 31(c) ]." *Schmuck II*, 489 U.S. at 716, 109 S.Ct. at 1450.

 Having established this standard for identifying lesser included offenses, we address the process to determine when a lesser included offense instruction should be given. We consider first the initiation of the instruction. Under WYO.R.CRIM.P. 30 (codified as WYO. R.CRIM.P. 31 and incorporating WYO. R.CIV.P. 51 by reference at the time of trial), the parties are to file "written requests that the court instruct the jury on the law." A requirement that the parties initiate a request for instructions is consistent with our adversarial system and supports the rationale of the mutuality doctrine. Further, it is consistent with the prior practice under *Selig*. The court, on its own motion, may give an instruction on a lesser included offense without a request from either party. *Roose v. State*, 759 P.2d 478 (1988). The right of the defendant to make a knowing and informed waiver of a potential lesser included offense also remains, but limited by the mutuality principles previously addressed. *Eckert*, 680 P.2d 478. The defendant cannot avoid a lesser included offense instruction simply by veto.

 Whether the trial court should instruct on a lesser included offense is not resolved simply by the fact that a request was made. *See*, John W. Davis, Comment, *Lesser Included Offense Instructions—Problems with Its Use*, 3 LAND & WATER L.REV. 587 (1968). Two primary theories have emerged in this area. The jury function theory recognizes that, if the offense is necessarily included within another, the jury ought to be free to weigh the evidence and determine guilt of the greater or the lesser offense. The court function theory prevents the giving of a lesser included offense instruction unless a fact question is present regarding one of the differentiating elements between the greater offense and the lesser offense and requires the court to evaluate the evidence. *See Jeffries*, 430 N.W.2d 728. *People v. Beach*, 429 Mich. 450, 418 N.W.2d 861 (1988); Dorean Koenig, *The Many–Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, 1 DET. C.L.REV. 41 (1975). In Michigan, both systems are presently used. The jury function theory is used with respect to those instructions that are "necessarily included" under a statutory elements test, but the court function theory is used for lesser included offense instructions presented under the cognate-evidence standard. *Beach*.

The critical factor in both theories is the court's role in evaluating the charge, the determination of the lesser included offenses, and the evidence. The third and fourth elements of the *Chapman* test established the court function theory in Wyoming by requiring: "there is some evidence that would justify conviction of the lesser offense" and "the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense." *Chapman*, 615 F.2d at 1299. While this court function theory certainly is consistent with the *Chapman* cognate approach, we believe its continued use is inappropriate. Our adoption of the statutory elements test for identifying lesser included offenses directs that the logically consistent jury function theory replace the evidence evaluation we formerly required of trial judges.

In our view, several benefits flow from this adjustment. First, the jury function theory is most compatible with the premise that a not guilty plea denies all of the elements of the charged offense, therefore, placing the State upon its proof beyond a reasonable doubt of each element. *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Jeffries*, 430

N.W.2d 728; Wyo.R.Crim.P. 11. Conversely, the court function theory, by demanding a review of the record and a weighing of the evidence, causes "considerable problems for trial courts in those cases where a defendant has not testified, has denied culpability, or has asserted inconsistent defenses." *Jeffries*, 430 N.W.2d at 738.

The second benefit that flows from the jury function theory is removing the often-confusing problem of whether a defense theory of the case instruction prevents giving a conflicting lesser included offense instruction. In *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896), the United States confronted both problems in a setting that would come from classic western lore. Stevenson was charged with murder after he won a gunfight with a deputy United States marshal in Indian country. The marshal had entered a saloon, with gun drawn, to arrest Stevenson. Stevenson claimed the marshal fired the first shot, and he simply acted in self defense. Stevenson also requested a manslaughter instruction which was denied. The jury found Stevenson guilty of murder, and he was sentenced to be hanged. Upon reviewing the conviction, the Supreme Court of the United States said it was for the jury to decide whether the killing was murder, manslaughter, or self defense, and the requested instruction should have been given.

> The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter, or an act performed in self-defense, and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be [a] matter of law for the decision of the court.

*Stevenson*, 162 U.S. at 315, 16 S.Ct. at 840. In *Mathews*, the court noted that Stevenson's affirmative defense of self defense was inconsistent with the claim that he killed in the heat of passion, but it reaffirmed the use of such inconsistent defenses. In *Schmuck*, the Supreme Court reaffirmed the continuing viability of *Stevenson*, saying it "reflects the 'practically universal' practice" in applying the statutory elements approach. *Schmuck II*, 489 U.S. at 720, 109 S.Ct. at 1452.

■ The third benefit we identify in invoking the jury function theory is that it permits the jury to test the credibility of the witnesses and possibly reject testimony that might tend to prove the elevating element of the greater offense that was charged. It follows that even the defendant who presents no witnesses in his own behalf still may be logically entitled to a lesser included offense instruction. *Jeffries*.

A fourth benefit from the jury function approach is that it supports the time-honored practice of allowing the jury to weigh the evidence. "So long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine. If there were any evidence which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then became a proper question for the jury to say whether the evidence were true, and whether it showed that the crime was manslaughter instead of murder." *Stevenson*, 162 U.S. at 314, 16 S.Ct. at 839.

■ The quantum of evidence necessary to support a lesser included offense instruction, as *Stevenson* alluded, has been discussed and ought to be perceived as minimal. Almost 100 years ago, in 1895, the Supreme Court of the United States interpreted the statutory predecessor of Federal Rule 31(c) as permitting the jury, when the defendant is not guilty of the charged crime, to find the defendant guilty of a "necessarily included" lesser offense "**if the evidence permitted.**" *Sparf v. United States*, 156 U.S. 51, 64, 15 S.Ct. 273, 278, 39 L.Ed. 343 (1895) (emphasis added). The justification for this restraint is to prevent juries in criminal cases from arbitrarily disregarding the evidence and the applicable principles of law. *Sparf*. The issue in *Sparf* was the refusal by the trial court to instruct the jury on manslaughter because the evidence supported

only a conviction of murder or acquittal. In *Sparf*, 156 U.S. at 64, 15 S.Ct. at 278, the court pointed out that the lesser included offense doctrine should not be used as a vehicle for the jury to "commute the punishment for an offense actually committed, and thus impose a punishment different from that prescribed by law." The landmark opinion in *Sparf*, authored by Justice Harlen, noted that the trial judge's ruling on the law, which prevented the giving of lesser included offense instruction unsupported by the evidence, avoided "confusion and uncertainty in the administration of the criminal law" and was not an invasion of the jury's role of being the factfinder. *Sparf*, 156 U.S. at 101, 15 S.Ct. at 293. The Court affirmed the application of this standard under FEDERAL RULE 31(c) in *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956). It is consistent with our rule that any instruction must be supported by the evidence.

In *Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009–10, 13 L.Ed.2d 882 (1965), the Supreme Court of the United States explained the evidentiary evaluation as connoting that a lesser included offense instruction would not be proper "where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and the greater evidence." The court elaborated, saying:

> If on the facts of a given case there are disputed issues of fact which would enable the jury rationally to find that although all the elements of [the greater offense] have not been proved, all the elements of one or more lesser offenses have been, it is clear that the defendant is entitled to a lesser-included offense charge as to such lesser offenses.

*Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010. Later, in *Keeble*, the Supreme Court summarized the rule that a defendant would be entitled to a lesser included offense instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble*, 412 U.S. at 208, 93 S.Ct. at 1995. The use of this minimum level of evalua-

tion, when the statutory elements test of lesser included offenses is applied, was reaffirmed in *Schmuck II*.

In *Jeffries*, 430 N.W.2d at 737, a simple illustration is recited that serves to demonstrate the circumstance in which a jury could not rationally convict a defendant of the lesser included offense. If the defendant had stipulated to the element or elements, which elevate the lesser offense to the greater, obviously, no conviction was possible for the lesser offense. In such a rare case, the evidence would be conclusive that no lesser included offense was committed and no instruction would be appropriate for it.

This evidence permitting standard was a part of Wyoming's former cognate standard. In *Selig*, this court indicated that the five *Chapman* elements provided "guidelines from which a determination can be made as to whether or not the evidence would permit the jury rationally to find the defendant guilty of the lesser offense but not guilty of the greater * * *." *Selig*, 635 P.2d at 790. Although we shall no longer use the five *Chapman* elements and specifically disavow the former role of the trial judge in weighing the evidence, we adhere to the view that the giving of a lesser included offense instruction is appropriate if there are in dispute factual issues that would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater. *Keeble; Sansone.*

In light of the statutory elements standard, the change from *Chapman*, we consider the appropriate appellate standard of review. In so doing, we first note what is necessary in order to preserve the error for consideration. We then consider the style of review to be conducted.

 Our procedure begins with WYO.R.CRIM.P. 30 (codified as WYO. R.CRIM.P. 31 at the time of trial and incorporating WYO.R.CIV.P. 51 by reference):

> At the close of the evidence or at such earlier time before or during the trial as the court reasonably directs, any party may file written requests that the court

instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. Before instructing the jury the court shall conduct a formal instruction conference out of the presence of the jury at which the court shall inform counsel of the proposed action upon their requests and shall afford them an opportunity to offer specific, legal objection to any instruction the court intends to give and to offer alternate instructions. No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection. The judge shall instruct the jury before the arguments and, if it becomes necessary, after the arguments.

The plain meaning of both the former and the present rule is that an objection must be imposed "to give the trial court an opportunity to correct possible error in instructions before the jury retires." *Muniz*, 783 P.2d at 143; *Morris v. State*, 644 P.2d 170 (Wyo.1982); 2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 484 (2d ed. 1982). In the absence of an objection to preserve the error, review will be limited to the noticing of any plain error. *Derksen*, 845 P.2d 1383; *Craney*, 798 P.2d 1202; *Muniz*, 783 P.2d 141; WYO.R.CRIM.P. 52(b).

The objection by a party requesting a lesser included offense instruction, however, is preserved when the instruction is refused, but was presented in writing with appropriate argument to inform the trial court of the nature and grounds for the instruction on the lesser included offense. *Keller*, 771 P.2d 379; WYO. R.CRIM.P. 51 (formerly WYO.R.CRIM.P. 48); *accord Muniz*, 783 P.2d at 142 (citing rule that: "When refusal of an instruction is claimed to be in error, the record must contain a clear statement sufficient to inform the trial court of the basis of the asserted error."). This rule may obviate the necessity of saying "I object" after the court's ruling, but any uncertainty is avoided by simply voicing the objection.

When the error is preserved, the standard for appellate review with respect to the grant or denial by the trial court of a lesser included offense instruction is directed by the nature of the question. We hold that the determination of what offenses are "necessarily included in the offense charged" is primarily a question of law. WYO.R.CRIM.P. 31(c). Therefore, the appropriate standard for appellate review is *de novo*. *United States v. Spencer*, 905 F.2d 1260 (9th Cir.1990); *United States v. Komisaruk*, 885 F.2d 490 (9th Cir.1989); *United States v. Brown*, 761 F.2d 1272 (9th Cir.1985). In this instance, the State specifically preserved its objection to the denial of the requested instruction, and the question before us is whether the State was entitled to that requested instruction for manslaughter despite Keffer's waiver. We proceed to review *de novo*.

We initially must determine whether, under the statutory elements, voluntary manslaughter remains a lesser included offense of second degree murder. The elements of voluntary manslaughter are: (1) killing another human being; (2) voluntarily, upon a sudden heat of passion. WYO.STAT. § 6-2-105(a)(i) (1988).[3] The elements of second degree murder require: (1) killing another human being; (2) purposely; (3) with malice. WYO.STAT. § 6-2-104 (1988). We must then determine whether the elements of the lesser offense are a subset of the elements of the charged offense. *Schmuck II*, 489 U.S. 705, 109 S.Ct. 1443.

In *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942), we identified the distinction between second degree murder and voluntary manslaughter as being created by the presence or absence of malice during the commission of the crime. The statute defining second degree murder re-

---

**3.** We treat only voluntary manslaughter because no argument was made suggesting that the instruction might be appropriate on involuntary manslaughter under WYO.STAT. § 6-2-105(a)(ii) (1988). The facts of this case might suggest reckless conduct even though the killing of the victim was involuntary.

quires that the defendant act "maliciously, but without premeditation." Wyo.Stat. § 6–2–104. Conversely, the manslaughter statute emphasizes the specific distinction using this language: "A person is guilty of manslaughter if he unlawfully kills any human being **without malice, expressed or implied** * * *." Wyo.Stat. § 6–2–105 (1988) (emphasis added). The manslaughter statute's language, however, does not make the absence of malice an element of that crime. *Jahnke,* 692 P.2d 911. "While the absence of malice is fundamental to manslaughter in a general definitional sense, it is not an actual element of the crime itself." *Cheatham v. State,* 719 P.2d 612, 622 (Wyo.1986) (*quoting People v. Doss,* 406 Mich. 90, 276 N.W.2d 9, 12 (1979)). Since our theory of criminal law is that wrongful conduct is punished, it is inappropriate to demand that the State establish the absence of malice beyond a reasonable doubt. The question whether voluntary manslaughter is a lesser included offense of second degree murder is not decided by determining malice to be the elevating element. A further question remains concerning whether a killing committed "voluntarily, upon a sudden heat of passion" differs from a killing committed "purposely" in such a manner that there is a different element in the voluntary manslaughter statute.

■■■ We first examine what "purposely" means. In *Nunez v. State,* 383 P.2d 726 (Wyo.1963), we determined that, when used as an element of second degree murder, "purposely" means intentionally or deliberately. *See also Cullin v. State,* 565 P.2d 445 (Wyo.1977). As so used in the second degree murder statute, "purposely" is a general-intent element that "describes the act to be committed and not an intention to produce a desired, specific result." *Crozier v. State,* 723 P.2d 42, 54 (Wyo. 1986). Because it is a general-intent crime, the evidence to support a conviction for second degree murder must demonstrate "the defendant acted with deliberation, but it does not require evidence that he deliberately killed." *Ramos v. State,* 806 P.2d 822, 830 (Wyo.1991). *See also Young v. State,* 849 P.2d 754, 761–62 (Wyo.1993). It

follows that "purposely" distinguishes the act from one committed "carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Dean v. State,* 668 P.2d 639, 642 (Wyo.1983) (*quoting Matter of Adoption of CCT,* 640 P.2d 73, 76 (Wyo.1982)).

■■■ In the manslaughter statute, the phrase, "voluntarily, upon a sudden heat of passion," states a single element of the crime. "Upon a sudden heat of passion" is a prepositional phrase within the adverbial clause begun by "voluntarily." The adverbial clause, as a unit, states the required conduct when a person "kills any human being without malice." Wyo.Stat. § 6–2–105; *see* 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, § 7.10 (1986). "Voluntarily" does mean intentionally. *State v. Helton,* 73 Wyo. 92, 276 P.2d 434 (1954). It denotes the condition of the mind at the time of the homicide and distinguishes a "voluntary" act from one which occurs by accident. *Ivey v. State,* 24 Wyo. 1, 154 P. 589 (1916). In this respect, the function of the phrase is similar to "purposely" in the second degree murder statute. Manslaughter also is a general intent crime that does not require a deliberate intent to kill. *Dodge v. State,* 562 P.2d 303 (Wyo.1977). "Voluntarily, upon a sudden heat of passion" then sets forth the extenuating circumstance that mitigates an offense, which would otherwise be second degree murder, to manslaughter.

Our laws recognize an intermediate crime lying someplace between the excusable, justifiable or privileged killing of a human being, and the unlawful taking of a life with malice. This is an unlawful type of voluntary homicide which is not legally excused, privileged or justified, but wherein there is an absence of express legal, implied or constructive malice. So we find in our law, that the intentional (i.e. voluntary) doing of the wrongful act, "upon a sudden heat of passion," although completely free of express, implied, constructive or legal malice, but committed without legal ex-

cuse, privilege or justification, is a punishable crime which we call voluntary manslaughter. This simply recognizes that there may be circumstances surrounding a killing which cannot be justified under the law of self-defense, and while not producing that degree of mental disturbance or aberration of the mind which is necessary in law to excuse the homicide, still leaves the mind devoid of that wicked, evil and unlawful purpose, or of that wilful disregard of the rights of others which is implied in the term "malice." Such circumstances mitigate or extenuate the act and **make the homicide a crime of lesser degree.** The "sudden heat of passion" contemplated by our voluntary manslaughter statute is descriptive of just such a state of mind, and it may occur from any emotional excitement of such intensity that it temporarily obscures reason, or leaves the mind bereft of reason.

*Helton,* 73 Wyo. at 115, 276 P.2d 434 (emphasis added).

██ Under this analysis, the elements of manslaughter do represent a subset of the elements of the second degree murder. We hold, therefore, that the crime of voluntary manslaughter is a lesser included offense of the crime of second degree murder. The force of long-standing statutory precedent in Wyoming and common law tradition favor our decision. *See, e.g., Stevenson,* 162 U.S. 313, 16 S.Ct. 839; *Jahnke,* 692 P.2d 911; *Nunez,* 383 P.2d 726; *Eagan,* 128 P.2d 215; *State v. Sorrentino,* 31 Wyo. 129, 224 P. 420, *reh'g denied,* 31 Wyo. 499, 228 P. 283 (1924); *Ivey.*

The State's request for a lesser included offense instruction on voluntary manslaughter was correct as a matter of law. Only two questions remain. First, is whether, under the jury function theory, there were disputed issues of fact which would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater. The second question is whether the State's request for the lesser included offense instruction was prevented by the *Eckert* waiver signed by Keffer.

██ With respect to the first question, the central factual dispute at Keffer's trial was her intent. She admitted firing the gun at Jackson and killing him. If the jury accepted all of the State's evidence, the killing was committed with malice. If the jury accepted Keffer's evidence, she acted in self defense, and the homicide was justifiable. A middle ground, however, is easily seen. If the jury questioned the credibility of the co-employee's testimony, which was strongly attacked by the defense during cross-examination, then the presence or absence of malice became an open question. Furthermore, the jury heard Keffer testify that she was "scared" as she withdrew the gun from a bedroom dresser. Keffer's husband, also testified that Keffer was afraid. The jury was entitled to weigh such fear to determine if it was of "such a character or degree as to render the accused incapable of cool reflection" thus reducing a second degree homicide to manslaughter. *Doe v. State,* 569 P.2d 1276, 1279 (Wyo.1977); *United States v. Guyon,* 717 F.2d 1536, 1543 (6th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984) (holding "heat of passion" could include the passion of fear).

██ As to Keffer's waiver of her right to lesser included offense instructions, we already have established that the defendant's right to request an instruction on an offense "necessarily included" in the charged offense is limited by the doctrine of mutuality. It follows that the mutuality doctrine implicit in WYOMING RULE 31(c) serves to limit the right of the defendant to waive such an instruction. In *Eckert,* the prosecution failed to object to the waiver, thus "no impediment to such waiver" was created. *Eckert,* 680 P.2d at 481. We now hold, however, that the objection by the State to the *Eckert* waiver offered by Keffer created the specific legal impediment necessary to require the trial court to sustain the State's objection and instruct the jury on the requested lesser included offense.

The adjustments to our precedent as set forth in this opinion protect the fundamen-

tal role of the lesser included offense doctrine in Wyoming, thus, ensuring a fair trial. Although change often brings a period of transition, the reaffirmation of the statutory elements test finds support under constitutional principles of double jeopardy, due process, and notice. Additionally, the uniform application of WYOMING RULE 31(c) with its federal counterpart provides useful guidance. The statutory elements test resolves the conflict between lesser included offense instructions and inconsistent defense theories of the case instructions by allowing both when supported by their respective analyses. Finally, the mutuality doctrine states the ability of both the prosecution and defense to request lesser included offense instructions. The defendant's right to waive such instruction is preserved, but it is limited by the ability of the State to object to such a· waiver if the evidence justifies the instruction.

We hold that, applying these standards, the trial court erred in denying the State's request for a lesser included offense instruction on voluntary manslaughter.

CARDINE, Justice, concurring.

I concur with the observation that putting labels on rules has never been particularly helpful to understanding them. Therefore, I submit a brief statement of my understanding.

The trial judge must first determine if all the elements of the lesser offense are found within the greater; and, if so, is there some evidence that would rationally permit the jury to find the accused guilty of the lesser and not guilty of the greater offense. If such evidence is present, the instruction should be given.