UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald RAFAELITO, Defendant–
Appellant.

No. 90–2260.

United States Court of Appeals,
Tenth Circuit.

Sept. 24, 1991.

Paula G. Burnett, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with her on the brief), Albuquerque, N.M., for plaintiff-appellee.

Ann Steinmetz, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Before MOORE and McWILLIAMS, Circuit Judges, and KANE, District Judge.*

McWILLIAMS, Circuit Judge.

In a one-count indictment, Donald Rafaelito, an Indian, was charged with knowingly engaging in a sexual act with Matilda Rafaelito,[1] an Indian female, on September 19, 1989, within the exterior boundaries of the Navajo Indian Reservation in New Mexico, by threatening her and placing her in fear of bodily injury, in violation of 18 U.S.C. §§ 1153, 2242(1) and 2245. A jury found Rafaelito guilty as charged and he was sentenced to imprisonment for 108 months followed by three years of supervised release. Rafaelito now appeals his conviction and sentence.

On appeal, Rafaelito raises three issues: (1) the district court erred in denying his pretrial motion to suppress his statements to Lawrence Kie, a criminal investigator for the Bureau of Indian Affairs; (2) the district court erred in refusing to instruct the jury on a lesser included offense; and (3) the district court erred in refusing to reduce Rafaelito's base offense level by two points for his "acceptance of responsibility." Finding no error, we affirm.

---

* Honorable John L. Kane, United States District Judge for the District of Colorado, sitting by designation.

1. Matilda Rafaelito was Donald Rafaelito's fourteen-year old daughter.

## I. Motion to Suppress

Prior to trial, defense counsel filed a motion to suppress the statements made by Rafaelito to Lawrence Kie, a criminal investigator for the Bureau of Indian Affairs who investigated the case and in the course thereof interviewed Rafaelito. The basis for the motion was that under the totality of the circumstances Rafaelito's statements to Kie were not voluntarily made and violated Rafaelito's Fifth Amendment rights. After an evidentiary hearing, the district court denied the motion.

Before any consideration of whether there was any form of coercion used to obtain the statements made by Rafaelito to Kie, we should first examine the statements made. Kie testified at trial that Rafaelito told him that he had tried to take off Matilda's pants, that she said "stop" and that he did stop and that he then, and later, apologized to his daughter. On cross-examination, defense counsel brought out that in the two-hour interview Kie had with Rafaelito, the latter at no time admitted that he had sexual intercourse with his daughter and stated that "all he did was that he tried to take down her pants," but didn't, and that "he felt badly about that."

Rafaelito did not give a written statement of his own to Kie. Nor was their conversation taped. However, at the conclusion of the interrogation Kie prepared a typewritten summary of Rafaelito's statements to him which contained Rafaelito's statement that he tried to pull down Matilda's pants, but that she had said, "Daddy, stop."

As a part of her cross-examination of Kie, defense counsel had Kie's typewritten statement containing the statements made to him by Rafaelito marked as defendant's Exhibit A, which were then identified by Kie as being a true and accurate recital of Rafaelito's statements concerning the matter. Later, on motion by defense counsel, and without objection from the United States attorney, defendant's Exhibit A was received into evidence.

Under the above described circumstances, we find it unnecessary to get into any discussion as to whether the statements Rafaelito made to Kie were, or were not, voluntary. The statements attributed to Rafaelito at trial did not constitute a confession of guilt, nor were they an admission against interest, at least not in the legal sense, since the statements made did not tend to establish any essential element of the crime charged, i.e., penetration accompanied by fear of bodily injury or threats.[2] Actually, as concerns the particular crime charged, Rafaelito's statements to Kie were exculpatory in nature, which is probably why defense counsel, not the prosecution, moved to admit defendant's Exhibit A. Rafaelito elected not to testify, and defendant's Exhibit A was a method of getting before the jury Rafaelito's version of what happened.

As indicated then, we are here concerned with an exculpatory statement given Kie by Rafaelito. In *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court held that the admission of an involuntary confession by a defendant was subject to the harmless error rule. It would seem to follow that an exculpatory statement, even assuming it was involuntary, would almost always be harmless error. Certainly we deem it to be such in the instant case.

## II. Lesser Included Offense

As indicated, Rafaelito was charged in a one-count information with a violation of 18 U.S.C. §§ 1153, 2242(1) and 2245(2). More specifically, he was charged with engaging in a "sexual act" with Matilda Rafaelito "by threatening her and placing her in fear of bodily injury." Under 18 U.S.C. § 2245(2) "sexual act" means, *inter alia*, a contact between a penis and the vulva and a "contact involving the penis occurs upon penetration, however slight."

---

**2.** There really is no dispute that on the day in question Donald Rafaelito picked up Matilda at her mother's house (Donald and Matilda's mother were divorced) ostensibly to buy Matilda a new dress and attend a family funeral, but that they then went to the ranch house of Donald's parents, who were not at home. The contact between Donald Rafaelito and Matilda occurred there.

At the conclusion of the evidence, defense counsel requested that the jury be instructed on the lesser included offense of "abusive sexual contact" as defined in 18 U.S.C. §§ 2244(a) and 2245(3). The latter section states that "sexual contact" means the intentional touching, either directly or through the clothing, of the genitals, anus, breast, inner thighs or buttocks of any person with an intent to abuse, arouse, or gratify the sexual desire of any person. The district court denied counsel's request for an instruction on the lesser included offense of "abusive sexual contact," and, on appeal, counsel asserts such constitutes reversible error. We disagree.

In *United States v. Joe*, 831 F.2d 218, 219 (10th Cir.1987), we approved a four-part test set forth in *Fitzgerald v. United States*, 719 F.2d 1069 (10th Cir.1983) for the giving of a lesser included offense instruction. That test was: (1) a proper request for such an instruction; (2) the lesser included offense must consist of some, but not all, of the elements of the offense charged; (3) the elements differentiating the two offenses must be a matter in dispute; and (4) a jury must be able to rationally convict the defendant of the lesser offense and acquit of the greater offense. *In accord, see United States v. Young*, 862 F.2d 815, 820 (10th Cir.1989).

In the instant case, the defendant did make a timely request for a lesser included offense instruction, and we will assume that "abusive sexual contact" is a lesser included offense to engaging in a "sexual act." However, we agree with the district court that the third and fourth parts of the four-part test are not here met.

As indicated, the defense called no witnesses in Rafaelito's defense. Defendant's Exhibit A, Kie's statement of what Rafaelito told him, would not in itself warrant a lesser included offense instruction. So, any evidence which would warrant a lesser included offense instruction necessarily would have to come from the government's case. In this connection, counsel argues that from the government's evidence the jury could have concluded that there was no penetration, in which event Rafaelito would not be guilty of engaging in a "sexual act," though he might well still be guilty of "abusive sexual contact." Such is not our reading of the record.

It is true that Matilda Rafaelito at one point in her testimony indicated that she and her father had not had "intercourse," because she had her legs together, but Matillda went on to testify that "he then pulled my legs apart" and after that "he injected me" and "put his penis inside."

As indicated, Matilda Rafaelito was taken to a clinic the day of the assault. A physician's assistant who examined her testified that she found "a very tearful young lady" and that her genital examination of Matilda showed an "obvious abrasion just below and adjacent to her vagina." Further, she testified that Matilda's vaginal area was so tender that she could not insert a speculum and make a pelvic examination. However, the physician's assistant testified that by using a saline Q-tip, she was able to collect specimens from inside the vagina. These specimens, which had been labelled "vaginal wash," were later analyzed and revealed the presence of male sperm. Without doubt the government's evidence clearly showed penetration, and hence the difference between the greater and any possible lesser offense was not really in dispute. Further, on the state of the record, we do not believe the jury could rationally convict Rafaelito of "abusive sexual contact" and acquit him of engaging in a sexual act with his daughter. In this general connection, we note that in closing argument, defense counsel argued that this was a case of incest, but not rape, thereby virtually conceding penetration.

### III. Acceptance of Responsibility

The presentence report recommended a two-point reduction of Rafaelito's base offense level because of his "acceptance of responsibility." The government filed an objection to any such reduction on the ground that Rafaelito had in fact made no such acceptance. After hearing, the district court agreed with the government and rejected the probation officer's recommendation that Rafaelito be given a two-

point reduction in his base offense level because of his acceptance of responsibility. On appeal, counsel assigns this as error. We disagree.

The basis for the probation officer's recommendation for a two-point reduction was that Rafaelito had told the probation officer that he did not believe his daughter "would lie" and that therefore "what she has reported with regard to the instant offense must be true." We agree with the district court that such falls far short of "acceptance of responsibility." It should be noted that all agree that Rafaelito had an alcohol problem and had been drinking before his contact with his daughter. However, such does not equate with "acceptance of responsibility." Certainly Rafaelito's statements to Kie do not evidence an "acceptance of responsibility." And neither do Rafaelito's statements to the probation officer evidence a meek and contrite heart. *United States v. Wach*, 907 F.2d 1038 (10th Cir.1990). In fact, Rafaelito still refuses to accept responsibility for his acts.

Judgment affirmed.