A05A0652. BROWN v. THE STATE.
(615 SE2d 628)

ADAMS, Judge.

Richard Cornell Brown was convicted by a jury of aggravated assault and four counts of entering an automobile. He appeals following the denial of his motion for new trial.

1. Brown first argues that the trial court erred by allowing testimony concerning an in-custody statement he made before he received *Miranda* warnings.

Officer McEntyre testified about the circumstances surrounding the making of the statement. McEntyre testified he introduced himself to Brown, who was already in custody, and told him he would like to discuss certain incidents which had occurred in the 24 hours prior to his arrest. These incidents included breaking and entering into automobiles and taking stereos and other items as well as an incident involving shots being fired from a moving vehicle.

McEntyre testified that he had interviewed one of the other perpetrators, Zachary Holloman, before he met with Brown, and Holloman told McEntyre that he and Brown were passengers in a truck being driven by Mikel Brooks and that when one of their intended theft victims started pursuing them, Brown fired shots from the truck and then threw the gun out of the vehicle. According to McEntyre, when he told Brown he wanted to talk to him about what happened, Brown volunteered that he was asleep in the truck and did not know anything about the crimes, and that when he woke up someone was pursuing them. Brown also made a statement concerning alleged abuse by a Paulding County Sheriff's Deputy at the time of his arrest. McEntyre, who had already identified himself as an investigator from Cobb County, said he reiterated that he was not a Paulding County investigator, and "pointed out to [Brown] since he obviously didn't want to talk about the incident, that I already . . . had been told that he had fired a weapon and that we would — that he had thrown it out on the side of the road and that we would go back and find the weapon." McEntyre testified Brown responded that "[the police] wouldn't be finding any gun, or something to that effect."

At trial, Brown's attorney objected to the admission of the statement about police not finding a gun. The trial court held a hearing outside the presence of the jury, and found that although Brown was in custody at the time the statement was made, it was not the product of questioning by the officer.

> In *Rhode Island v. Innis*, 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980), the Supreme Court determined that interrogation is not limited to actual questioning of a suspect by police but includes "express questioning [of] or its functional equivalent." Id. at 300-301. The phrase "functional equivalent" was explained as including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Id. at 301. The Court

noted that "(t)he latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." Id. The Court concluded that "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis in original.) Id. at 301-302. In citing police practices that did not involve express questioning but which may amount to interrogation, the Court listed . . . the use of psychological ploys such as positing the guilt of the suspect as a fact. . . .

*Kennedy v. State*, 246 Ga. App. 236, 238 (2) (540 SE2d 229) (2000). *Metheny v. State*, 197 Ga. App. 882, 884-885 (1) (b) (400 SE2d 25) (1990).

The critical inquiry in this case is thus whether Officer McEntyre's statement to Brown that he already knew Brown fired the gun and then threw it out the window was the "functional equivalent" of an interrogation. We find that on its face, the statement appears to be the type condemned by our Supreme Court as a "psychological ploy" — stating the guilt of the accused as a fact — constituting the functional equivalent of an interrogation. But the State, while acknowledging that the focus here is primarily upon the perception of the suspect, not the intent of the officer, argues in its brief that "McEntyre meant only to inform Brown that Cobb County charges would be forthcoming" and that, therefore, the statement was not made with the intent to elicit an incriminating response. The State also points out that Brown never testified he was goaded into making the remark, but instead denied making any statement to McEntyre. However, while we agree with the State that the transcript shows unequivocally that Brown denied making *any* statement to McEntyre, we do not find where McEntyre testified that he only made the statement to inform Brown of the forthcoming charges. Cf. *Pierce v. State*, 255 Ga. App. 194, 196 (2) (564 SE2d 790) (2002) (sheriff testified that his comments that " 'we have bodies' " and " 'gut up and be a man about it' " were not intended to prompt or goad the defendant into making incriminating statements).

But even assuming the trial court erred by concluding that the statement was not the product of an interrogation, we have little hesitancy in finding that it was voluntary under a due process analysis. *Metheny*, 197 Ga. App. at 886 (1) (c). We will therefore determine whether it was harmless error to admit the statement, even assuming it was obtained in violation of *Miranda*, "but, nevertheless, voluntary under due process standards." Id. at 886 (1) (d).

"Although *Miranda* makes no exception for exculpatory statements, 'for the purpose of determining the harmful or harmless nature of the error, whether a defendant's statement is exculpatory or incriminating is material.' *Wilson v. Zant*, 249 Ga. 373, 377 (290 SE2d 442) (1982)." Id. at 887 (1) (d). Here the statement was not, in and of itself, incriminatory. See *Singleton v. State*, 266 Ga. App. 795, 797 (2) (598 SE2d 80) (2004). Additionally, Brown testified at trial and admitted firing the shots from the truck, although his testimony was that he fired up in the air and that he did so because he felt like he was in danger. He did not admit to disposing of any weapon by throwing it from the truck, and denied that the weapon recovered from the side of the road and introduced at trial, which had been stolen earlier that night, was the weapon he fired, maintaining instead that the weapon he used belonged to the driver of the truck. Thus, his testimony at trial was consistent with McEntyre's testimony that Brown told him that police would not find a gun on the side of the road. In light of these circumstances, especially the fact that Brown admitted firing a gun on the night in question, we find no reasonable probability that admission of the statement contributed to the guilty verdict. Thus the admission of the statement, even if error, was harmless. *Metheny*, 197 Ga. App. at 887 (1) (d). See also *Campbell v. State*, 255 Ga. App. 502, 506 (1) (c) (565 SE2d 834) (2002).

2. Brown also contends that the trial court erred in allowing Officer McEntyre to testify about the statements Holloman made to him, arguing that the trial court erred in finding these statements admissible under *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982) since Holloman's veracity had not been "affirmatively . . . placed in issue." *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998). "A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." (Footnote omitted.) *Tuff v. State*, 278 Ga. 91, 94 (4) (597 SE2d 328) (2004). *Woodard*, 269 Ga. App. at 320 (2). The transcript here shows that during cross-examination, Brown's trial attorney posed questions to Holloman which were clearly intended to challenge the truthfulness of his trial testimony by showing that his present recollection of events was suspect since he could recall certain things concerning the crimes but not others. Counsel also elicited testimony from Holloman that part of his plea negotiation included the agreement to testify against Brown. The trial court did not err in admitting the prior statement in this case. Id.; *Thom v. State*, 268 Ga. App. 207, 211 (2) (601 SE2d 741) (2004); *Odom v. State*, 267 Ga. App. 701, 703 (3) (600 SE2d 759) (2004).

3. Brown also challenges the effectiveness of his trial counsel.

In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo. (Citations and punctuation omitted.) *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003).

*Alwin v. State*, 267 Ga. App. 236, 238-239 (2) (599 SE2d 216) (2004).

(a) Brown contends his trial counsel was ineffective for failing to contact possible alibi witnesses (his girlfriend and "god-brother") after he provided counsel with the names of these witnesses. But Brown's trial attorney testified at the motion for new trial hearing that Brown later instructed him not to contact these witnesses since his girlfriend was expecting a baby and he did not want his "god-brother" to miss work, telling his attorney he would handle it himself. This testimony was consistent with Brown's testimony at trial concerning why the witnesses were not called, and consistent with his testimony that "I got myself in this trouble, . . . I get myself out of this trouble. I don't try to worry my girlfriend." And to the extent that Brown testified differently at the motion for new trial hearing, it was for the trial court to determine witness credibility and to resolve any conflicts in the evidence. *King v. State*, 270 Ga. App. 399 (1) (606 SE2d 616) (2004); *Alwin*, 267 Ga. App. at 238 (1).

Moreover, it was not unreasonable for trial counsel to defer to Brown's strategy about contacting these witnesses.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

(Citations and footnotes omitted.) *Gordon v. State*, 252 Ga. App. 133,

135 (2) (555 SE2d 793) (2001) (refusing to find ineffective assistance based on defendant's own induced error).

Moreover, Brown has failed to make the necessary showing that these witnesses would have agreed to testify at trial and given testimony establishing an alibi defense. Although Brown contends that the trial court never ruled on his motion for funds to hire an investigator so that he could make this showing, it was Brown's burden to secure this ruling or take whatever steps were necessary to meet his burden. Otherwise, he risked the present situation — an inability to prove that these witnesses would have testified at trial and aided his defense. "Thus, he cannot show a reasonable probability that these witnesses' testimony would have resulted in a different verdict." (Footnote omitted.) *Carter v. State*, 265 Ga. App. 44, 50 (4) (d) (593 SE2d 69) (2004).

(b) Brown next argues that his trial counsel was ineffective for failing to file a discovery motion and obtain the statements he made while in custody. Brown argues had he done so, he could have made a formal request for a *Jackson-Denno* hearing prior to trial, and could have been better prepared to rebut the State's position that the statements were voluntary.

Trial counsel testified at the motion for new trial hearing that the State's file was open, and that he reviewed the file before trial. He also testified that, although he had trouble recollecting his precise thoughts because of the lapse of time (about five years), part of his decision in not filing a formal discovery motion was to avoid reciprocal discovery since the State's file was open to him.

Moreover, as stated in Division 1, the trial court did conduct a hearing on the admissibility of the statement in response to trial counsel's objection. And since we have deemed harmless any error in the admission of the statement, Brown cannot show how he has been prejudiced by the failure to hold an earlier hearing. This contention of ineffectiveness is thus without merit. *Alwin*, 267 Ga. App. at 240 (2); *Singleton*, 266 Ga. App. at 798 (3).

Brown has failed to carry his burden of showing his counsel was ineffective. *Washington v. State*, 274 Ga. 428, 430 (2) (554 SE2d 173) (2001). The trial court did not err in denying his motion for new trial on this basis.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JUNE 8, 2005.

*John D. Thalhimer*, for appellant.

*Patrick H. Head, District Attorney, Victoria S. Aronow, Amy H. McChesney, Assistant District Attorneys,* for appellee.