The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Isaac R. ALLEN, Defendant–Appellant.

No. 05CA1038.

Colorado Court of Appeals,
Div. I.

Oct. 4, 2007.

Rehearing Denied Nov. 15, 2007.

**34**

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Isaac R. Allen, appeals the judgment of conviction entered upon a jury verdict finding him guilty of introducing contraband in the first degree. We reverse and remand for a new trial.

I.

While driving a friend's car, defendant was stopped for a routine traffic infraction and subsequently arrested on the basis of an outstanding warrant for driving under restraint. On separate occasions in the course of booking him into the county jail, both a police officer and a sheriff's deputy directed defendant's attention to signs stating:

> It is a Class 4 felony to introduce or attempt to introduce the following contraband into this facility: alcoholic beverages[;] controlled substances[;] marijuana or marijuana concentrate[;] firearms or ammunition[;] explosive devices or substances[;] knives or sharpened instruments[;] poisons or acids[;] bludgeons or projectile devices[;] drug paraphernalia [;] [and] any other devices, instrument or substance which is ready [sic] capable of causing, or inducing fear of death or bodily injury, the use of which is not specifically authorized.

The officer asked defendant, "[D]o you have any of these items?" and told him, "It's best to tell me that you have them now because once you get inside the facility, it's a class four felony"; subsequently, the deputy asked defendant twice whether he had any of those items. On all three occasions, defendant denied having any of the listed items.

In searching inside defendant's leg cast, however, the deputy recovered 6.5 grams of marijuana in a baggie. Upon discovering the marijuana, the deputy asked defendant "why he didn't tell [the deputy] about this before," to which defendant responded either (according to the deputy) "I don't know" or (according to defendant) "[W]ell, I don't know. I didn't recall it was there."

Defendant was charged with a number of offenses, including introducing contraband in

the first degree. Under section 18–8–203(1)(a), C.R.S.2007, a person commits that offense if he or she "knowingly and unlawfully ... [i]ntroduces or attempts to introduce ... marihuana or marihuana concentrate ... into a detention facility." At trial, defendant denied "knowingly" attempting to introduce contraband into the jail. He testified that he had forgotten that he had several days earlier placed the baggie inside his leg cast.

The jury convicted defendant of introducing contraband in the first degree, driving under restraint, and driving without a license plate light. He appeals only the first of these convictions.

## II.

On appeal, defendant contends that the trial court erred in not suppressing statements obtained in violation of his Fifth Amendment privilege against self-incrimination. We agree.

■ Initially, we note that, in the trial court and in his opening brief on appeal, defendant challenged only the admissibility of those statements in which he denied possessing contraband. Because he did not challenge the admissibility of his "I don't know" statement, we do not address that issue on appeal. Cf. People v. Salyer, 80 P.3d 831, 835 (Colo.App.2003)(declining to consider grounds for suppressing statements that were not raised in the trial court).

In the trial court, defendant asserted, as pertinent here, that the statements in which he denied possessing contraband were inadmissible, inasmuch as they were made without benefit of the warnings required by Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In response, the prosecution argued that the officer and the deputy were not required to comply with Miranda when, as part of the booking process, they elicited routine information designed to protect the safety of jail personnel and inmates.

The trial court concluded that Miranda was inapplicable because the authorities were trying "to make sure that no contraband got into the jail, and it is legitimate and very necessary that they prevent items from coming into the jail which can be used to harm other inmates, deputy sheriffs, or others who may be in the jail."

■ When reviewing a motion to suppress statements, we defer to the trial court's findings of fact but review de novo its conclusions of law. People v. Wallace, 97 P.3d 262, 266 (Colo.App.2004).

Here, because the facts are undisputed, this case turns on the application of law to those facts.

■ Under Miranda, the prosecution may not use in its case-in-chief a statement obtained by police during custodial interrogation unless the suspect was advised of and validly waived certain Fifth Amendment rights. See People v. Wood, 135 P.3d 744, 749 (Colo.2006).

There are, however, a number of exceptions to this rule, two of which—the booking question exception and the public safety exception—are pertinent to the present case.

■ Under the booking question exception to Miranda, as part of the booking process, police ordinarily may question a suspect who has not received Miranda warnings about his or her basic identifying data (for example, name, age, address, and marital status). See Pennsylvania v. Muniz, 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990)(plurality opinion); see also People v. Anderson, 837 P.2d 293, 296 (Colo.App.1992) (under Miranda, the concept of "interrogation" does not encompass such questions). However, the prosecution cites no authority, and we are aware of none, for the proposition that, as part of the booking process, a suspect may routinely be questioned in the absence of Miranda warnings about subjects unrelated to basic identifying data. See generally 2 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 6.7(b) at 547–50, cum. supp. at 169–70 (2d ed.1999); Meghan S. Skelton & James G. Connell, III, The Routine Booking Exception to Miranda, 34 U. Balt. L.Rev. 55 (2004).

■ Inasmuch as the questions here did not relate to basic identifying information, we conclude that the booking exception does not

support the trial court's ruling. *See State v. Spaulding,* 2002 WL 31094752 (Ohio Ct.App. No. C–020036, Sept. 20, 2002) (unpublished opinion) (holding inadmissible statements made in response to analogous jailhouse questioning).

■ Ultimately, however, the trial court based its ruling on the need to protect those present in and at the jail from harm. Under the public safety exception to *Miranda,* police may in some circumstances properly question a suspect who has not received *Miranda* warnings about the presence of weapons that could immediately endanger them or members of the public. *See New York v. Quarles,* 467 U.S. 649, 657–58, 104 S.Ct. 2626, 2632, 81 L.Ed.2d 550 (1984); *see also People v. Mullins,* 188 Colo. 23, 27, 532 P.2d 733, 735 (1975). Although our caselaw indicates that the public safety exception applies most readily in the context of immediate, on-scene investigations of crime, *see People v. Requejo,* 919 P.2d 874, 879 (Colo.App.1996), courts elsewhere have applied the public safety exception in other contexts as well. *See La-Fave, supra,* § 6.7(b) at 553–56, cum. supp. at 173–75. The determinative question is whether the officer's questioning related to an objectively reasonable need to protect the police or the public from immediate danger associated with a weapon. *See Quarles,* 467 U.S. at 655, 104 S.Ct. at 2631; *People v. Ingram,* 984 P.2d 597, 605 (Colo.1999).

For purposes of this appeal, we assume (1) that there is an objectively reasonable need to protect law enforcement officers, jail personnel, and inmates from dangers caused by the introduction of weapons into a detention facility, and (2) that prior to admitting an arrestee to jail, an officer, to ensure his or her personal safety as well as the personal safety of others, may ask the arrestee whether he or she has a weapon or other dangerous item. *See United States v. Carrillo,* 16 F.3d 1046, 1049–50 (9th Cir.1994) (officer's inquiry, made at detention facility, of arrestee who had not received *Miranda* warnings as to whether he had any drugs or needles on his person permissible under the public safety exception); *see also United States v. Lackey,* 334 F.3d 1224, 1225 (10th Cir.2003) ("officers about to conduct a lawful frisk or

search of a suspect need not give *Miranda* warnings before asking the suspect about the presence of dangerous objects on his person"); *People v. Inman,* 765 P.2d 577, 579 (Colo.1988) (police may conduct inventory search of suspect at jail based on a number of reasons, including "the protection of the arrestee and others from risks associated with a dangerous instrumentality or substance that might be concealed in an innocent looking article").

■ Here, however, neither the officer nor the deputy limited his inquiry to the presence of weapons or dangerous items. They both asked whether defendant had any of the items listed on the signs. To be sure, those items included weapons and dangerous instruments; but they also included items which were not weapons or inherently dangerous in nature, for example, alcoholic beverages, marijuana or marijuana concentrate, and most drug paraphernalia.

We conclude that the scope of the officer's and the deputy's questions exceeded the proper scope of the public safety exception. *See State v. Pender,* 181 Or.App. 559, 47 P.3d 63, 64–65 (2002) (question whether defendant had any "knives, guns, syringes, [or] controlled substances," exceeded both routine arrest and public safety questions, to the extent it sought information about contraband, not weapons, because the question "was designed precisely to do what *Miranda* prohibits: elicit incriminating information").

We are, of course, aware of decisions in which courts have recognized that police questioning need not always be precise to fall within the ambit of the public safety exception. *See United States v. Newton,* 369 F.3d 659, 663, 678–79 (2d Cir.2004) (officer asked, at inception of search of apartment, whether defendant had any "contraband" in the house); *United States v. Williams,* 181 F.3d 945, 948, 953 (8th Cir.1999) (officer asked near inception of search of apartment, "[I]s there anything we need to be aware of?").

However, the leeway given in those cases was based upon the following justification: "Courts recognize that public safety questions are framed spontaneously in dangerous situations. Precision crafting cannot be ex-

pected in such circumstances." *Newton,* 369 F.3d at 678; *see also Williams,* 181 F.3d at 953 n. 13 ("the concerns for the safety of the officers required a spontaneous inquiry by the officer").

Here, unlike in either *Newton* or *Williams,* the circumstances were not such as to require spontaneity in police questioning. No sense of urgency attended either the officer's or the deputy's questions. Defendant had already been frisked at the scene of his arrest and was in handcuffs when questioned by the officer and the deputy at the jail. Under these circumstances, the officer and the deputy could have readily limited their un-*Mirandized* questions to the subject of weapons or dangerous instruments. We conclude that by not doing so, they interrogated defendant in violation of *Miranda.* Accordingly, defendant's statements should have been suppressed.

In reaching this conclusion, we necessarily reject the prosecution's assertion that there can be no *Miranda* violation when, as here, the defendant's statements were exculpatory in nature. *See, e.g., Hammer v. Bowlen,* 934 F.Supp. 911, 917 (M.D.Tenn.1996) (*Miranda* rule applies whether statement is inculpatory or exculpatory in nature); *Weber v. State,* 457 A.2d 674, 687 (Del.1983) ("The proscription against use of statements obtained in violation of *Miranda* applies to any statement regardless of its exculpatory nature."); *Brown v. State,* 273 Ga.App. 577, 615 S.E.2d 628, 631 (2005) ("*Miranda* makes no exception for exculpatory statements").

That said, the exculpatory nature of defendant's statements is not immaterial to the resolution of this appeal. *See Brown,* 615 S.E.2d at 631 (" '[F]or the purpose of determining the harmful or harmless nature of the [*Miranda* ] error, whether a defendant's statement is exculpatory or incriminating is material.' " (quoting *Wilson v. Zant,* 249 Ga. 373, 290 S.E.2d 442, 446 (1982)) ).

Although the court in *United States v. Rafaelito,* 946 F.2d 107, 108 (10th Cir.1991), intimated that the admission of "an exculpatory statement . . . would almost always be harmless error," that is not always the case. *See Edwards v. United States,* 923 A.2d 840, 847 (D.C.2007) (when ostensibly exculpatory

evidence is a key aspect of the government's evidence against a criminal defendant, the error in admitting the exculpatory evidence is not harmless).

■ Where, as here, error of constitutional magnitude has occurred, reversal is required unless the error was harmless beyond a reasonable doubt. *People v. Scearce,* 87 P.3d 228, 234 (Colo.App.2003); *see also People v. Vasquez,* 155 P.3d 588, 592 (Colo.App. 2006) (error in admitting statement obtained in violation of *Miranda* assessed under harmless beyond a reasonable doubt test).

■ In deciding whether an error is harmless beyond a reasonable doubt in this context, an appellate court should consider (1) the importance of the statements to the prosecution's case, (2) the cumulative nature of the statements, and (3) the overall strength of the prosecution's case. *People v. Melanson,* 937 P.2d 826, 833 (Colo.App.1996).

Ultimately, we ask "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Blecha v. People,* 962 P.2d 931, 942 (Colo.1998)(quoting *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).

■ If a reasonable possibility exists that the error contributed to the verdict, then the error is not harmless. *Scearce,* 87 P.3d at 234.

■ Here, we cannot conclude that the admission of defendant's statements was harmless beyond a reasonable doubt. The evidence of defendant's guilt on the critical element—knowledge—was not overwhelming. Defendant's statements, though ostensibly exculpatory and somewhat supportive of his defense, formed the centerpiece of the prosecution's case on this issue.

Defendant claimed, in his testimony, that he had forgotten that he had placed the marijuana in the leg cast. During closing argument, the prosecution argued:

So we have to talk about this element, knowingly. . . . I want to remind . . . you

that two times, at the front end and the back end of the chute ..., there was a sign that should have triggered anyone's memory that, oh, that's something I shouldn't have. He was asked about it point blank. No, no, no. Did he act knowingly? .... [D]id the defendant know he had marijuana in his cast? ... Common sense dictates that's the only answer that makes sense. He was asked the question both by Agent Larson and by deputy Schweiger, do you have any of these items? No. Deputy Schweiger asked him two times, are you sure, do you have any of these items? Nope.

....

So what does the defendant know before he gets to the jail, they didn't find it. They didn't find the weed. So they take him to the jail and show him the sign and they ask him again, and it's, I don't have any of that stuff. The agent searches him again, doesn't look in the cast. They didn't find it again. Goes through the chute in the detention facility. Now Deputy Schweiger asks him, and why would he believe he would search him any differently. Do you have any of that stuff? Nope, I've got none of that stuff. Only now they look in the cast. And like a kid with his hand in the cookie jar, when they come up with the marijuana, why didn't you [tell] me about this? And he gives the kid answer, I don't know.

Given the prominence the prosecution gave to the improperly admitted statements in closing, we conclude that there is a reasonable possibility that those statements contributed to defendant's conviction for introducing contraband and that, consequently, the error was not harmless beyond a reasonable doubt.

The judgment of conviction for introducing contraband is reversed, and the case is remanded for a new trial on that charge.

Judge MÁRQUEZ and Judge CASEBOLT concur.