2014 COA 141

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Deanna Lynn FRYE, Defendant–Appellant.**

**Court of Appeals No. 12CA0006**

Colorado Court of Appeals, Div. A.

Announced October 23, 2014

John W. Suthers, Attorney General, Rebecca L. Williams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE WEBB

¶ 1 A jury convicted Deanna Lynn Frye of multiple charges arising from drugs found on her person when she was booked into the

Jefferson County jail, following her arrest on outstanding warrants for unrelated offenses. Frye seeks a new trial, contending the trial court erred in refusing to suppress her statement made at the jail before having been advised of her right to remain silent that she did not possess any drugs and in responding to a jury question that during a traffic stop, police officers may ask passengers for identification.

¶ 2 Alternatively, she contends one conviction for introducing contraband into a detention facility must be vacated or merged because she cannot be convicted twice for having introduced two types of drugs at the same time. This contention raises a novel question in Colorado.

¶ 3 We remand to vacate one of the convictions for introducing contraband and otherwise affirm.

## I. The Trial Court Erred in Refusing to Suppress Frye's Statement at the Jail

### A. Preservation and Standard of Review

¶ 4 Frye preserved this issue by filing a motion to suppress that presented the same argument which she now raises on appeal.

¶ 5 In reviewing a suppression ruling, "[w]e defer to the trial court's factual findings and will not overturn them if they are supported by competent evidence in the record." *People v. Syrie*, 101 P.3d 219, 222 (Colo. 2004). But a trial court's legal conclusions "are subject to de novo review." *Id.*

¶ 6 "If a statement obtained in violation of *Miranda* was admitted as part of the prosecution's case-in-chief, over the defendant's objection, reversal is required unless the error was harmless beyond a reasonable doubt." *People v. Vasquez*, 155 P.3d 588, 592 (Colo. App. 2006).

### B. Background

¶ 7 The facts material to the suppression ruling are undisputed. At the suppression hearing, the officer who arrested Frye and transported her to the jail testified:

before we pass them on to the Jeffco deputies there's a sign outside before you put them in the holding cell that clearly states, if you take any of these items in, you'll be

charged with a felony, and I asked her to read it. *And I asked her if she had any of those things on her.* And Ms. Frye said, I told you a million times, I don't have any of those items on me.

(Emphasis added.) The Attorney General acknowledges that Frye was then in custody but had not yet been advised of her *Miranda* rights.

¶ 8 At trial, the prosecutor referred to Frye's statement in opening, elicited this statement during direct testimony of the officer, and referred to it again during summation.

### C. Law

[3, 4] ¶ 9 The United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also* Colo. Const. art. II, § 18. Under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a criminal defendant interrogated while in custody must be advised of, and voluntarily waive, "his right to remain silent, such that any statement he makes may be used against him, and his right to the presence of an attorney, either retained or appointed." *People v. Madrid*, 179 P.3d 1010, 1014 (Colo. 2008). If "the prosecution has not met its burden of proving that the defendant waived his *Miranda* rights voluntarily, knowingly, and intelligently, then the statements must be suppressed." *People v. Owens*, 969 P.2d 704, 707 (Colo. 1999).

¶ 10 "While due process of law forbids the use of any statements that were actually coerced by law enforcement authorities, the prophylactic warnings formulated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply only to custodial interrogation." *People v. Figueroa–Ortega*, 2012 CO 51, ¶ 7, 283 P.3d 691 (citation omitted). For the purposes of *Miranda*, interrogation includes " 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *Madrid*, 179 P.3d at 1014 (quoting *Rhode Island v. Innis*, 446

U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). "In considering whether an officer should have known that his or her actions were reasonably likely to elicit an incriminating response, 'we consider the totality of the circumstances surrounding the making of the statement.'" *Id.* (quoting *People v. Gonzales*, 987 P.2d 239, 241 (Colo. 1999)).

### D. Application

■ ¶ 11 Frye relies primarily on *People v. Allen*, 199 P.3d 33 (Colo. App. 2007), in which the division held that the trial court had erred in failing to suppress a comparable denial made under similar circumstances and the error was not harmless beyond a reasonable doubt. The Attorney General responds that *Allen* was wrongly decided; if *Allen* was correctly decided, it is distinguishable; and in any event, reversal is not required because error here, if any, was harmless beyond a reasonable doubt. We reject the first and second assertions, but agree with the third.

■ ¶ 12 To begin, although we "are not obligated to follow the precedent established by another division," we "give such decisions considerable deference." *People v. Smoots*, 2013 COA 152, ¶ 20, —— P.3d ——. The Attorney General does not assert that because of "changed conditions or law," applying *Allen* here "would result in manifest injustice." *Core–Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 10, 300 P.3d 963 (internal quotation marks omitted) (law of the case doctrine). Nor do the authorities cited by the Attorney General—*United States v. Carillo*, 16 F.3d 1046 (9th Cir. 1994), and *United States v. Reyes*, 225 F.3d 71 (1st Cir. 2000)—show that *Allen* "is no longer sound." *Core–Mark Midcontinent, Inc.*, ¶ 10.[1] For these reasons, we decline to revisit the holding in *Allen*.

¶ 13 The Attorney General's attempts to distinguish *Allen* are unpersuasive. There, as here, a sign warned arrestees of items

that could not be brought in to the jail. As well, both there and here, officers did not merely direct the arrestee's attention to the sign. The booking officer in *Allen* asked three times whether the defendant had any of the items listed. And Frye was asked a similar question, at least once. This question renders irrelevant the Attorney General's assertion—even if correct—that directing an arrestee's attention to the sign alone would not constitute an interrogation under *Miranda*.

¶ 14 The Attorney General does not dispute that this question was "reasonably likely to elicit an incriminating response." Instead, he argues that "[i]f an officer repeats the sign's warning in question form, it does not transform a warning sign into an interrogation." This argument is also unpersuasive because such a question does more than afford arrestees a "final opportunity to avoid felony charges" by discarding prohibited items. Rather, the question elicits a response that may, as in *Allen*, be used in later proceedings to undercut an arrestee's assertion of a mistaken belief that the arrestee did not possess any prohibited items.

■ ¶ 15 Next, the Attorney General asserts that admission of Frye's statement was harmless beyond a reasonable doubt, using the familiar standard that "a court must be confident beyond a reasonable doubt that the error did not contribute to the guilty verdict." *Bernal v. People*, 44 P.3d 184, 200 (Colo. 2002). The constitutional harmless error test "is not whether, in a trial, that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* at 200–01. And "[i]f there is a reasonable possibility that the defendant could have been prejudiced the error cannot be harm-

---

1. *United States v. Carillo*, 16 F.3d 1046, 1049 (9th Cir. 1994), applied the public safety exception to *Miranda* because the suspect was asked if he had syringes on his person. But after extensive analysis, *People v. Allen*, 199 P.3d 33, 36 (Colo. App. 2007), declined to apply this exception because the question at issue "also included items which were not weapons or inherently dangerous in nature, for example, alcoholic bev-

erages, marijuana or marijuana concentrate, and most drug paraphernalia." *People v. Reyes*, 225 F.3d 71, 77 (1st Cir. 2000), turned on the booking exception to *Miranda*. *Allen*, 199 P.3d at 35–36, also considered and rejected this exception, explaining, "[i]nasmuch as the questions here did not relate to basic identifying information, we conclude that the booking exception does not support the trial court's ruling."

less beyond a reasonable doubt." *People v. Rodriguez*, 914 P.2d 230, 278 (Colo. 1996).

¶ 16 This assertion presents a much closer question. To resolve it, as in *Allen*, 199 P.3d at 37, we "consider (1) the importance of the statements to the prosecution's case, (2) the cumulative nature of the statements, and (3) the overall strength of the prosecution's case."

¶ 17 The first factor is a toss-up. Unlike in *Allen*, where the defendant asserted that he had not acted knowingly because he had forgotten that he had marijuana secreted in a leg cast, here Frye defended on the basis that the transport officer had fabricated the evidence. The absence of a dispute over mens rea favors the prosecution. Still, the prosecution referred to the statement three times during trial. This favors Frye. *See id.* at 38 ("Given the prominence the prosecution gave to the improperly admitted statements in closing, we conclude that there is a reasonable possibility that those statements contributed to defendant's conviction.").

¶ 18 The second factor favors Frye. No other evidence was cumulative of her denial.

¶ 19 The third factor favors the prosecution, and it is dispositive. Evidence of Frye's guilt was overwhelming. In addition to the three different types of drugs found on Frye, the jury heard unrebutted testimony that she had tried to conceal a pouch containing drugs under her breast and resisted an officer's search of this area of her body. *See People v. Phillips*, 2012 COA 176, ¶ 149, 315 P.3d 136 (holding error harmless beyond a reasonable doubt "because the other properly admissible evidence was overwhelming").

¶ 20 Therefore, although we conclude that the trial court erred in not suppressing Frye's statement, we further conclude that the error was harmless beyond a reasonable doubt.

## II. The Trial Court Erred in Responding to a Jury Question Concerning an Officer's Request for Identification

### A. Preservation and Standard of Review

¶ 21 The Attorney General concedes that Frye preserved this issue.

¶ 22 Whether instructions accurately inform the jury of the governing law is subject to de novo review. *See, e.g., People v. Lucas*, 232 P.3d 155, 162 (Colo. App. 2009). But "[w]hether to provide the jury with additional written instructions in response to a question is a determination within the trial court's sound discretion." *People v. Bass*, 155 P.3d 547, 552 (Colo. App. 2006).

¶ 23 Most instructional errors are subject to harmless error review. *See, e.g., People v. Grassi,* 192 P.3d 496, 500 (Colo. App. 2008).

### B. Background

¶ 24 After the arresting officer testified, jurors asked several questions dealing with an officer's right to request identification from a passenger—which the arresting officer had requested of Frye—during a routine traffic stop. The trial court answered, "these questions are legal questions that this witness cannot answer." But after the prosecution rested and before deliberations began, jurors asked two more, similar questions.

¶ 25 Defense counsel objected to the court's proposed response, arguing that it would "bolster the credibility of the police officer" and adding, "I don't think that's appropriate to have that answered." Still, the court told the jury:

> That is a legal question for me, as a judge, to consider. The Court instructs you that it is legally permissible for a police officer to request identification from a passenger on a traffic stop. This is not an issue you have to determine.

### C. Law

¶ 26 When a jury asks a question, an additional instruction is often appropriate unless:

> (1) the jurors can be adequately informed by directing their attention to some portion of the original instructions; (2) the request concerns matters not in evidence or does not pertain to the law of the case; or (3) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

*Copeland v. People*, 2 P.3d 1283, 1288 (Colo. 2000).

## D. Application

¶ 27 Applying *Copeland* here, the original instructions did not address the subject. But the legality of the officer's traffic stop and demand that Frye produce identification had been raised and resolved against Frye in a pretrial hearing.[2] At trial, defense counsel argued that the arresting officer's testimony had been "incomplete, inaccurate, and an outright fabrication." But counsel did not challenge—and probably could not have challenged—the officer's demand for identification before the jury.

¶ 28 Thus, because the additional instruction did not "pertain to the law of the case," the court should have responded only that the question was a legal matter for the court. Having so concluded, we need not address Frye's argument as to why the court's statement was inaccurate, at least in part. Regardless, for three reasons, we discern no "reasonable probability that the error contributed to the defendant's conviction." *Yusem v. People*, 210 P.3d 458, 469 (Colo. 2009) (internal quotation marks omitted).

- As discussed above, the evidence of guilt was overwhelming.
- The court also told the jury, "This is not an issue you have to determine."
- And even if the instruction indirectly bolstered the officer's credibility, it did not do so as to any aspect of the officer's conduct material to the charged offenses.

## III. Frye's Conviction on Two Counts of Introducing Contraband Violated Double Jeopardy Principles

### A. Preservation and Standard of Review

¶ 29 Frye preserved this issue by arguing that all but one of these counts should be dismissed or combined.

¶ 30 Double jeopardy contentions are reviewed de novo. *See, e.g., People v. Arzabala*, 2012 COA 99, ¶ 19, 317 P.3d 1196.

### B. Background

¶ 31 Frye was charged with three counts of introducing contraband into a detention facility. The prosecution presented evidence that the search of Frye at the jail discovered methamphetamine, cocaine, and oxycodone. The jury convicted her on two of these counts and acquitted her on one of them. The trial court imposed concurrent sentences on the two convictions.

### C. Law

¶ 32 The Double Jeopardy Clauses of the United States and Colorado Constitutions protect against "multiple punishments for the same offense." *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005) (internal quotation marks omitted). But "upon a clear showing of legislative intent, the General Assembly is free to authorize multiple punishments based upon the same criminal conduct without offending the Double Jeopardy Clause." *Meads v. People*, 78 P.3d 290, 293 (Colo. 2003). "To determine the legislative intent, we look to the statutory language itself and give the words and phrases their ordinary and commonly accepted meaning." *Cain v. People*, 2014 CO 49, ¶ 10, 327 P.3d 249.

¶ 33 Where, as here, multiple charges arise under the same statute, the Double Jeopardy inquiry narrows to the "unit of prosecution," which is "the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." *Woellhaf*, 105 P.3d at 215. Based on reasons including "the appropriateness of multiple punishments" and "the practical consequences of requiring that similar or related acts be distinguishable," the General Assembly may treat acts "motivated by a single objective, for example, as a single crime." *People v. Abiodun*, 111 P.3d 462, 465 (Colo. 2005).

¶ 34 In *Woellhaf*, the supreme court adopted a two-step inquiry: "the issue involves 'first, an examination of the scope of

---

2. During the traffic stop, Frye gave the officer a false name. Eventually, the officer ascertained her true identity and discovered an outstanding warrant. This warrant was the ground for arresting her.

prosecution authorized by the statutory prescriptions, and, next, an examination of the factual components of each prosecution and the evidence in support thereof.'" 105 P.3d at 215 (quoting *People v. Williams*, 651 P.2d 899, 902 (Colo. 1982)). The first step looks "exclusively to the statute." *Id.*

### D. Application

¶ 35 As relevant here, section 18–8–203(1), C.R.S. 2014, subjects to criminal liability, one who:

(a) Introduces or attempts to introduce a dangerous instrument, malt, vinous, or spirituous liquor, as defined in section 12–47–103, C.R.S., fermented malt beverage, as defined in section 12–46–103, C.R.S., controlled substance, as defined in section 18–18–102(5), or marijuana or marijuana concentrate, as defined in section 27–80–203(15) and (16), C.R.S., into a detention facility or at any location where an inmate is or is likely to be located, while the inmate is in the custody and under the jurisdiction of a political subdivision of the state of Colorado or the department of corrections, but not on parole. . . .

The parties cite no Colorado case, nor have we found one, applying Double Jeopardy principles to the question Frye raises under this statute.

¶ 36 The statute identifies different ways of committing the offense by listing categories of items that may not be introduced, separated by the word "or." *See, e.g., People v. Greer,* 262 P.3d 920, 924 (Colo. App. 2011) ("Double jeopardy is commonly implicated when a statute establishes multiple ways of committing the same offense and a defendant is charged with multiple offenses because the offense was committed using more than one of the alternative methods."). Thus, we must decide whether the statute creates a unit of prosecution smaller than an item or items in any one of these categories that a defendant "[i]ntroduces or attempts to introduce." For the following reasons, we conclude that it does not.

¶ 37 The list of categories begins with the definite article "a," which "particularizes the subject which it precedes." *Coffey v. Colo. Sch. of Mines,* 870 P.2d 608, 610 (Colo. App. 1993). Use of the definite article suggests that each category is a discrete way of committing the offense. *Cf. Arzabala,* ¶ 41 (For lack of the definite article preceding "person," "the offense of leaving the scene of an accident is the number of accident scenes, not the number of victims in any given accident."). And where "a number of acts are joined as a disjunctive series, in a single sentence, without any attempt to differentiate them by name or other organizational device, a legislative intent to permit separate convictions and sentences for each enumerated act is not so readily apparent. . . ." *Abiodun,* 111 P.3d at 466; *see People v. Friend,* 2014 COA 123M, ¶ 62, —— P.3d ——.

¶ 38 Thus, the language proscribing introduction of items by categories does not support creating multiple counts based on introducing more than one item within any one of those categories. As the supreme court cautioned in *Woellhaf,* 105 P.3d at 218, "[n]either the prosecution nor the courts may fracture this unit of prosecution into multiple counts."

¶ 39 Because the first step looks only at the statute, this language also forecloses the Attorney General's invitation to consider that "the potential danger" is greatly increased whenever "a defendant attempts to introduce multiple types of contraband." And even if not, " 'doubt will be resolved against turning a single transaction into multiple offenses.' " *Abiodun,* 111 P.3d at 468 (quoting *Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).

¶ 40 Still, under such statutory language, "[t]he prosecution may pursue multiple convictions if the underlying evidence supports factually distinct offenses." *Woellhaf,* 105 P.3d at 218; *see also Abiodun,* 111 P.3d at 470 (Defendant may be "separately punished for successive commissions of the same statutory offense."). This evidentiary inquiry implicates "whether the contacts occurred at different locations, were the product of new volitional departures, or were separated by intervening events." *Woellhaf,* 105 P.3d at 219; *see also Abiodun,* 111 P.3d at 470 (looking to the "temporal and spatial proximity" of the events).

¶ 41 Here, the record affords no basis for identifying such distinct offenses. Frye's entry into the jail, with three different controlled substances on her person, occurred at

the same time and place, without the influence of any intervening events. These circumstances did not offer her "an opportunity to reflect before embarking on a new course of conduct." *Woellhaf*, 105 P.3d at 219; *see also People v. Mintz*, 165 P.3d 829, 834 (Colo. App. 2007) (Unless acts were the product of new volitional departures, court "must find the acts were not distinct offenses.").

¶ 42 Therefore, both aspects of the *Woellhaf* inquiry show a Double Jeopardy violation.

### IV.   Conclusion

¶ 43 The case is remanded to vacate one of the convictions for introducing contraband into a detention facility. Otherwise, the judgment of conviction is affirmed.

CHIEF JUDGE LOEB and JUDGE NEY * concur.